## Benjamin *against* Benjamin.

A wife, as such, has no original or inherent power to make any contract which is obligatory on her husband.   Hence, it is incumbent on a party whose claim against the husband is derived from such contract, to show that she had authority from him to make it, or that he subsequently assented to it.

This authority may be general or special, express or implied ; and includes in it all the powers which are necessary, or proper, or usual, to effectuate the purposes for which such authority was created.

The wife, whether the husband is abroad or at home, is not presumed to be his agent generally, or to be entrusted with any other authority as to his affairs, than that which it is usual and customary to confer upon the wife.

*A* attached, in a suit against *B* on a note, certain lands of *B* and the grass growing thereon ; and thereupon the wife of *B* gave *A* leave to cut and gather the grass, and sell it on the execution in such suit, and apply the avails thereon ; which was done accordingly.   In an action of trespass, brought by *B* against *A*, for taking the grass, the defence relied upon, was, the arrangement thus made between *A* and *B's* wife.   It appeared, that previously to the acts complained of, *B* left his wife and family in a dwelling-house on said land, and went to one of the *Southern* states, leaving her in the sole occupation of such house and land, without committing the charge or management thereof, or of any of his farming business, to any other person ; that she, during her husband's absence, caused his farm to be cultivated, and his stock of cattle upon it to be taken care of ; that she hired out and lent the working oxen ; and that she employed a labourer, for the period of three months, whose wages were paid by *B*, after his return.   Held, that in the absence of any authority general or special, expressly given by *B* to his wife to make the arrangement in question, or of any subsequent ratification thereof by him, the law, under the circumstances stated, implied no authority in her to do such act ; consequently, the defence set up could not prevail.

*Hartford,*
June, 1843.

Benjamin
*v.*
Benjamin.

It appearing, that the expenses of cutting, curing and storing the hay, were included in the costs taxed against *B*, in the first-mentioned suit, and collected and applied on the execution ; it was held, that *B* was entitled, in this action, to recover the value of the hay, without any allowance for the expenses of cutting, curing and storing it.

THIS was an action of trespass *quare clausum fregit,* with a count *de bonis asportatis.*

The cause was tried at *Hartford, September* term, 1842, before *Storrs,* J.

On the trial, the plaintiff, in support of the allegations in his declaration, proved, that while he was the owner of two tracts of land, and of about 18 acres of grass growing on one of them, and of about 6 acres of grass, with a quantity of oats, growing on the other, the defendant, by virtue of a writ of attachment in a suit brought by him against the plaintiff, on a promissory note, caused said land and the grass growing on one of the tracts, and the oats, to be attached ; that the officer who served the attachment, under the direction of the defendant, employed labourers, and cut all said grass, and converted it into hay, and immediately thereafter removed it from the premises and deposited it in a barn provided by them for that purpose ; that they also cut, gathered, and carried away said oats ; that said writ was duly returned, and the defendant recovered judgment thereon, by default, for the amount of the note and costs of suit, including in such costs the expenses of cutting, curing, removing and storing the hay ; and that the defendant afterwards took out execution on said judgment, and caused it to be levied on said hay and oats, and had them sold and the avails applied to defray the expenses of said levy and sale, and the balance upon the execution. These facts were admitted by the defendant.

No claim was made by the plaintiff, that any of the proceedings in said suit, or on the judgment or execution, were incorrect, or did not furnish a perfect justification to the defendant in this suit, except in respect to said grass, and the including in said judgment the expenses of cutting, curing, removing and storing it.

The defendant, on his part, claimed to have proved, that after said writ of attachment had been served, the wife of the plaintiff gave the defendant leave to cut and gather said grass, and sell it on the execution, and apply the avails there-

on ; and that she had authority so to do. For the purpose of showing such authority, the defendant offered evidence to prove, and claimed to have proved, that the plaintiff, in *November*, 1836, left his wife and family, consisting, among others, of three or four small children, and with which family the plaintiff, up to that time, had been living, in a dwelling-house situated on said land, in *Granby*, and went to the state of *South-Carolina*, where he remained until the spring of 1840, when he returned to *Granby*, and lived with his wife and family : That during the plaintiff's absence, he made no communication, in any form, to his wife, excepting that immediately after his arrival in *South-Carolina*, in *November*, 1836, he wrote her a letter, and another letter, a few weeks before his return in the spring of 1840 : That when he so left said *Granby*, he left his wife and family living in said house and upon said farm, upon which farm he left also a small stock of cattle : That he made very little, if any, provision for the support of his wife and family, or any of them, during his absence, either before, at, or after the time of his so leaving : That when he so left, he left with the intention, as avowed by him, of returning again early in the course of the then next season : That until he so left, he was himself in the occupancy of said dwelling-house and land, said land constituting his farm, and on leaving, left his wife in the sole occupation of said house and land ; and did not then, or at any time before or after, commit the charge or management of his farm, or any of his farming business, during his absence, to any other person than to his wife ; and that she, during his absence, took the charge and management thereof, and gave directions in respect to the same, and had also, during his said absence, the management and direction of his family : That during his absence, she, upon one occasion, employed a labourer for the period of three months, who, in pursuance of said employment, laboured on said farm, during the greater part of said term, and was paid, for his services, by the plaintiff, after his return in 1840, without any objection or disavowal of the right of his wife to employ him : That while the stock of cattle so left by him remained, during his absence, upon said farm, the plaintiff's wife caused the same to be taken care of, and hired out and lent the working oxen, being part of the stock, and caused the fences upon said farm to be erected and repaired,

*Hartford,*
June, 1843.

Benjamin
*v.*
Benjamin.

as occasion required, and the land to be tilled and cultivated ; and it did not appear, that the plaintiff had, at any time after his return to *Granby*, in any instance, disapproved of, or disavowed, said acts of his wife. And the defendant further offered evidence to prove, and claimed that he had proved, that during the plaintiff's said absence, and just before the time when he, the defendant, entered upon said land and cut said grass, the wife of the plaintiff having no means of cutting and gathering said grass, or procuring the same to be done, and said grass having arrived at maturity, and being in a situation in which it would, in a very short time, be wasted and lost,—acting in behalf of the plaintiff, agreed with the defendant, to enter upon the premises, and cut and gather said grass, and cause it to be sold upon the execution which should be obtained in said suit, and in that way applied in payment of said debt against the plaintiff ; and that the plaintiff's wife, acting in his behalf, expressly authorized, permitted and requested the defendant so to cut and apply said grass ; and that he, under and in pursuance of said agreement and license, did enter, cut, and convert said grass into hay, remove the same from the premises, and cause it to be sold and applied upon said execution; which, as he claimed, he had good right to do.

The plaintiff then introduced evidence to rebut the defendant's proof, and particularly to show, that he went to *Georgia* about his ordinary business, expecting to return the ensuing summer ; that he left with his wife supplies of money, and made ample provision for the supply of her wants and those of his family, at a neighbouring store, during the period of his absence ; that he did not leave, and had no intention of leaving, his wife or family, but returned to them as soon as the state of his affairs would permit ; and that she was not his general agent, nor in any manner authorized to act in his behalf ; and that the defendant had notice that she had no authority to act for the plaintiff.

The defendant claimed, that from the facts proved and admitted, the plaintiff's wife was authorized and empowered, as the agent of her husband, to enter into such agreement with the defendant, and to grant such liberty and permission ; and that he had good right, by reason of the premises, to enter upon said land, and cut and proceed with said grass as he had

done; that the law would imply such authority from the plaintiff to his wife; that if the law did not imply such authority, the jury might, and ought, from the evidence and facts aforesaid, infer and presume, that the plaintiff had given express authority to his wife to that effect; and he requested the court to charge the jury accordingly.

The plaintiff claimed, that by law the plaintiff was not liable upon contracts made by his wife, except when such contracts were for necessaries, or when she was constituted his agent, and such contracts were within the scope of her agency; that in this case, the plaintiff had not constituted her his agent, with authority to give a preference to any particular creditors, or to turn out growing grass, or other property of the plaintiff, upon attachment or execution; or to pledge the same to secure any debt or costs; or to give liberty to take the same on attachment or execution; and that she was not his general agent, nor his particular agent, for the purpose claimed by the defendant: That the defendant did not proceed in cutting and taking said grass or hay, under any such license as now claimed, but under process, and took a judgment against the plaintiff for the expense of cutting, curing, removing and storing said grass or hay; and that the plaintiff was entitled to recover at least the value of said grass or hay, when it was so removed and taken away, by the defendant; and that no allowance or deduction should be made therefrom, for the labour or expense of cutting, gathering, making or securing said hay: And the plaintiff requested the court to charge the jury in conformity with his claim.

The defendant insisted, and requested the court to charge the jury, that if the jury should find in favour of the plaintiff, the plaintiff was not, of course, entitled to recover any more than the value of said grass while standing upon the land; and that allowance might, and ought to be made, for the trouble and expense of cutting, and making and securing the hay.

The court charged the jury, that from the facts admitted, and those claimed to have been proved by the defendant, the law would not imply any authority from the plaintiff to his wife on his behalf, to make or enter into any agreement, or grant any such liberty or permission to the defendant as claimed by him; and if she had attempted in his behalf to

*Hartford,*
*June, 1843.*

Benjamin
*v.*
Benjamin.

enter into any such agreement, or grant any such license or permission, the plaintiff was not bound thereby, unless he had expressly given to her authority to that effect, (which authority might be constituted by a general authority from him to her to act on his behalf in all his business during his said absence, or by a special authority from him to her to do the particular acts in question,) or unless he had subsequently adopted and ratified said acts; in either of which cases, he would be bound thereby; and whether the plaintiff had given to his wife any such authority, or adopted and ratified any such acts of his wife, was a question of fact for the jury, from the evidence before them, to decide. The court, at the same time, expressed an opinion upon the question of fact, that the evidence did not satisfactorily prove such authority or ratification; and as to the rule of damages, the court charged the jury, that if they should find for the plaintiff, he was entitled to recover at least the value of said hay, at the time it was removed and taken away from the plaintiff, without any allowance for the time, trouble or expense of cutting, making or securing the same.

The jury returned a verdict for the plaintiff; and the defendant moved for a new trial for a misdirection.

*Hungerford* and *Chapman*, in support of the motion, contended, 1. That if the husband goes off, and leaves his wife in the sole possession of his farm, the law constitutes her his agent to manage that farm, and dispose of its produce. Here, the plaintiff left no one but his wife in charge of his farm, cattle and other property. She managed the farm, there being no other provision made for its occupation, let out the oxen, and had, in fact, the sole controul of the property. She also employed a labourer, whose wages were paid by the plaintiff, after his return, thus ratifying her agency. Under these circumstances, he virtually proclaimed to the world, that she was authorized to manage the property, which he had left her in the sole possession of. 1 *Sw. Dig.* 31, 2. 2 *Stark. Ev.* 57. *Spencer* v. *Tisue, Addis. R.* 316. 319. *Emerson* v. *Blonden,* 1 *Esp. Ca.* 142. *Fenner* v. *Lewis,* 10 *Johns. R.* 38. *Rotch* v. *Miles,* 2 *Conn. R.* 638. *Church* v. *Landers,* 10 *Wend.* 79. *Anon.* 12 *Mod.* 564.

2. That the correct rule of damages, in this case, is, the

value of the grass, at the time it was severed. This is all that the plaintiff has lost, and all that the defendant has gained. The trespass was not committed upon the manufactured article, but upon the raw material. Suppose the defendant had taken a piece of steel, and had worked it up into watch springs of a thousand times its value, would it be just to make the defendant pay the value of the watch springs, instead of the steel? The plaintiff is in no way affected by the enhanced value, produced solely by the labour and at the expense of the defendant.

*Toucey*, contra, insisted, 1. That the principal point in this case, was not a question of necessaries, nor in any manner connected with the duty of the husband to support his wife or family, but a mere question of *authority*, supposed to be given to another person—and hence a mere matter of *fact* for the jury to determine.

2. That upon the evidence offered by the defendant, in connexion with the facts admitted, the law cannot imply authority to make the contract in question.

3. That the rule of damages was correctly given to the jury. The plaintiff having included in his judgment the expenses upon the grass, cannot again have the benefit of those expenses in this suit.

STORRS, J. The justification set up by the defendant, for doing the acts complained of, in respect to the cutting and carrying away the grass in question, depends on the validity of the authority given, by the wife of the plaintiff.

It is not claimed by the defendant, that such authority is valid, by virtue of the power which the wife has, in certain cases, to charge her husband, in the procurement of *necessaries* for herself or the family. For it was not for the use of any part of the family, that she, in the present case, authorized or procured the defendant to do the acts complained of; nor could they, in any measure, contribute to that purpose. Neither the grass, nor its avails, went to their use; nor was the arrangement respecting it, made with any such view; but solely for the benefit of others. Although, therefore, it should be conceded, that the wife, under the circumstances claimed to be proved by the defendant, would have had the right, if

necessary for the support of herself or the family, to dispose of the grass and apply the avails to that purpose ; and that her husband would have been bound, by such an appropriation of his property ; it would not go to show, that the disposition of the property, in the present case, was valid or binding on him, no such cause existing, and the disposition being for no such purpose. Hence, it is wholly unnecessary to consider the subject of the liability of the husband, in any case, for contracts entered into, through the instrumentality of the wife, for necessaries furnished on his credit. The case has not been attempted to be placed on the principles applicable to those cases. The question here, therefore, does not respect the liability which the law imposes on the husband, independent of any express assent on his part, or notwithstanding his express dissent ; but is purely one of agency—of an authority possessed by the wife, to act on his behalf, in relation to his general concerns.

A wife, as such, has no original or inherent power to make any contract, which is obligatory on her husband. No such right arises from the marital relation between them. If, therefore, she possesses a power in any case, to bind him, by her contracts made on his behalf, it must be by virtue of an authority derived from him, and founded on his assent—although such assent may be precedent or subsequent, and express or implied ; and this is the light in which such contracts are universally viewed. When such authority is conferred, the relation between them and the consequences of that relation, are analogous to those in the ordinary case of principal and agent. And that she has the capacity to be constituted, by the husband, his agent, and to act as such, equally with any other person, there is no doubt. In *Fitz. Nat. Brev.* 120. G. the law is thus laid down : " A man shall be charged in debt for the contract of his bailiff or servant, where he giveth authority unto the bailiff or servant to buy or sell for him : and so the contract of the wife, if he give such authority to his wife, otherwise not." In *Manby* v. *Scott*, 1 *Mod.* 125. it is said, by Mr. Justice *Hyde*, that " a feme covert cannot bind or charge her husband, by any contract made by her, without the authority or assent of her husband, precedent or subsequent, express or implied." The law on this subject is stated, with great clearness and precision, by *Selwyn*, in his *Nisi Prius,*

*Hartford,*
June, 1843.

Benjamin
*v.*
Benjamin.

*p.* 288., where he treats of the liability of the husband as to contracts made by the wife during coverture. After stating that the relation of husband and wife is, in respect of the wife's contracts, binding the husband, analogous to the relation of master and servant, he says: " Indeed, in contemplation of law, the wife is the servant of the husband :" and, after citing the above passage from *Fitzherbert,* he says: " From this passage it appears, that the husband is not liable to his wife's contracts, unless he has given his authority or assent ;" and adds, " It is incumbent, therefore, on a creditor, who brings an action against a husband, upon a contract made with his wife, to show, that the husband has given such assent, or to lay before a jury such circumstances as will enable them to presume, that such assent has been given ; and in the latter case, if such presumption is not rebutted by contrary evidence, the jury may find against the husband, but not otherwise ; for the wife has not any power originally to charge the husband." These principles are so plainly in accordance with the whole current of the authorities, that a reference to some of them only is necessary. *Vin. Ab. tit.* Baron & Feme. E. A. 5. *Pow. on Cont.* 57, 58. 5 *Bing.* 550. 2 *Conn. Rep.* 638. 1 *Bac. Ab.* 489. 1 *Lev.* 4. *Bull. N. P.* 136. 1 *B. &* *P.* 227. n. by *Day.* 1 *Salk.* 118. 2 *Ld. Raym.* 1006. *Clancy* 23.

But, although these principles are universally acknowledged, it is not always easy to determine what amounts to proof of the husband's assent, where it is claimed to be implied merely ; as will be obvious, by looking at those cases, especially, in which questions have arisen as to the liability of the husband for supplies furnished to his wife, when the husband had abandoned or deserted her, or turned her from his doors, or there was an agreement for a separation between them, with an allowance for her support. Whatever difficulty there may be in the present case, is of that character.

In this case, no authority to make the contract, claimed to be proved respecting the hay, was conferred expressly, by the plaintiff, upon his wife. This question of fact was submitted to the jury, who found, that he did not constitute her his agent generally, to manage his business, nor specially authorize her to make the contract in question, nor subsequently ratify such contract.

The question, then, and indeed the only one made on the argument, is, whether, from the facts claimed to be proved by the defendant, the law implies any power in the wife of the plaintiff to make the contract in question on his behalf.

The defendant claims, in the first place, that such a power is implied, because it is, in its nature, necessarily incidental to the authority conferred on the plaintiff's wife to take charge of his farm, and manage and superintend it. It is a familiar principle of the law of agency, that every authority given to an agent, whether general or special, express or implied, impliedly includes in it, and confers on such agent, all the powers which are necessary, or proper, or usual, to effectuate the purposes for which such authority was created. It embraces the appropriate means to accomplish the desired end. This principle is founded on the manifest intention of the party conferring such authority, and is in furtherance of such intention. The rule is most fully and minutely illustrated, by examples and authorities, in Judge *Story's* treatise on *Agency*, to which it is only necessary to refer. As applicable to the case before us, the plaintiff's wife, on the ordinary principle of agency, would have power to do whatever is necessary or proper, in the care and management of the farm entrusted to her, such as keeping in order the buildings, fences and implements of husbandry, cultivating the land, and preserving the crops, and perhaps disposing of such crops, if necessary to enable her to do these things ; and generally, to do whatever is necessary and proper in order to execute the trust reposed in her ; and the usual course of such an employment might be shown, in order to ascertain what was thus necessary and proper, and the character and design of the trust. Farther than this, her power would not extend. It is scarcely necessary to say, that, within these principles, she has no right to dispose of her husband's property in her possession, in the extraordinary and injurious manner, and for the purpose, claimed to be proved by the defendant. If it should be held, that such an agent might make such a contract, it would be difficult to stop short of investing her with a general and unlimited authority as to all his affairs. The very case of entrusting another with the superintendence of a farm, is put in the books on the civil law, under which it was held, that an agency of that description does not authorize the agent to

sell the property of the principal for any purpose, unless it be of a perishable nature. Whether we should restrict his powers within limits so narrow, it is unnecessary to enquire; but on no principle can we extend them as is claimed in the present case.

It is next claimed by the defendant, that from the marital relation between the plaintiff and his wife, the law implies a larger authority than from the ordinary relation between principal and agent, and that the power to make the contract in question is implied from such relation. We have seen, that a wife, by virtue of such relation, possesses no original power to bind her husband, by her contracts made on his behalf; and that her power for that purpose must, therefore, be derivative. It appears, nevertheless, from the authorities, that the law will, in some cases, presume the wife to be the agent of her husband, when no such presumption would exist as to another person; and also will, in some cases, imply a larger authority to the wife than to an ordinary agent; and this perhaps, whether the husband be absent from home, or not; and that, in other cases, where he is absent, a presumption would arise that his wife has authority to act in his behalf, which would not exist, if he were at home. But it will be found, that in all such cases, these inferences are founded on the fact that it is usual and customary to permit the wife to act in such cases. It is a presumption arising from the state of society. Thus, in *Anonymous,* 1 *Stra.* 527. "*Pratt,* C. J. allowed the wife's declaration that she agreed to pay 4 *s.* per week for nursing a child, was good evidence to charge the husband; *this being a matter usually transacted by the women.*" Judge *Reeve,* in his *Domestic Relations,* (*p.* 79.) says: "The husband is bound to fulfill the contract of his wife, when it is such an one as wives, according to the usage of the country, commonly make. If the wife should purchase, at a merchant's store, such articles as wives in her rank of life usually purchase, the husband ought to be bound; for it is a fair presumption that she was authorized so to do, by her husband. If, however, she were to purchase a ship or yoke of oxen, no such presumption would arise; for wives do not usually purchase ships or oxen." On the same ground, in *Church* v. *Landers,* 10 *Wend.* 79. the wife, in the husband's absence, was presumed to have been left an agent for the

hiring out of his horses. 2 *Cowen's Phillipps on Ev.* 294. note 298. In *Spencer* v. *Tisue, Aldis. R.* 316. a payment to the wife, of a debt due to the husband, in his absence, was held good, for the same reason. We do not find any adjudged case, which sanctions the doctrine that the wife, whether the husband is abroad or at home, is presumed to be the agent of her husband generally, or to be entrusted with any other authority as to his affairs, than that which it is usual and customary to confer upon the wife. It would be not only unreasonable, and, as it respects the husband's interests, unsafe, but it would be going beyond what could fairly be presumed to be his intention, to extend the powers of the wife by implication or presumption farther than this principle warrants; and that it justifies the contract in question, cannot be claimed.

We think, therefore, that the defendant's justification, founded on the authority of the plaintiff's wife, fails.

It is also claimed, that the court below erred in the rule of damages given to the jury. If the rule, in this case, were not varied, by the circumstance that the expenses of curing the hay were included in the judgment recovered by the defendant against the plaintiff, and paid from the avails of the hay on the execution, it is clear, that the cases cited, particularly from the *New-York* reports, would vindicate the rule laid down on the trial. *Brown* v. *Sax* & al. 7 *Cow. R.* 95. *Baker* v. *Wheeler* & al. 8 *Wend.* 505. Whether this court would be disposed to adopt the rule of damages in those cases, as a general one, applicable to actions of this description, we do not intend to decide; for we are satisfied, that, under the facts of this case, the rule prescribed was correct. The expenses of curing the hay being included in the costs taxed against the plaintiff, and collected and applied on the judgment from its avails, it is obvious, that the plaintiff would not be fully indemnified against the loss which he has sustained, by the acts of the defendant, unless he recover the value of the grass after it was converted into hay; and the least that justice demands, is an indemnity to the plaintiff. On the facts, therefore, admitted on the trial, the rule of damages was correct.

For these reasons, a new trial should not be granted.

In this opinion the other Judges concurred.

**New trial not to be granted.**