EZEKIEL SAWYER *v.* HIRAM CUTTING, FREEMAN HINDMAN AND
BARRON MOULTON.

*Agency of wife.  Transfer of note overdue.   Collateral security.*

The power of a wife to bind her husband by her contracts depends upon the
fact of agency alone,—she having, as wife, no original and inherent power to
bind him by any contract.

The wife, whether the husband is absent, or at home, sick, or in health, is not to
be presumed his agent generally, or intrusted with any authority in relation to
his affairs, other than  that which it is  usual and customary to confer upon the
wife.

An arrangement, made between the wife and a debtor of the husband, who is also
surety for the husband upon a promissory note to a third person, that the debtor
shall pay the note, upon which he is surety, and that such  payment shall ope-
rate as payment of his  debt to the husband, is not within the ordinary powers
of a wife in the management of  the  domestic affairs of her husband, and can
only be sustained, by showing affirmatively, that it was authorized by the hus-
band, or was subsequently recognized by him.

And such arrangement will not be rendered valid by  the  fact, that the husband,
at the time the arrangement was made, was sick and wholly incapable of trans-
acting business, and so continued until his death, and had no other person, ex-
cept his wife, to transact his business.   Such a condition of things will justify
the wife in taking care of the property of her husband and providing necessaries
for the family, but will not constitute her the general agent of her husband and
so authorize her to transact his business generally, to transfer his property and
pay his debts.

And if the debt to the husband, which it is claimed was paid by the debtor's car-
rying into effect the  arrangement made with the wife, consist of a  promissory
note, and this note had been transferred by the husband previous to the
arrangement being made by the wife, but the holder gave no notice to the
debtor of the transfer until after that arrangement had been executed by the
debtor, the right of the holder to collect the note will not be precluded by the
fact, that the note was overdue at the time he received it.

And if the debtor prove the sickness of the husband at the time of making the
arrangement, and claim, that from this fact the assent of the husband is to be
presumed, it is competent for the holder of the note to prove, for the purpose
of rebutting this presumption, that the husband was taken sick and became in-
sane previous to the arrangement being made, so as to be wholly unable to
transact business, and so continued, until the time of his death.

And although the holder of the note, in such case, received the note as collateral security for the payment of a sum less than the amount of the note, he is yet entitled to recover from the maker the full amount due upon the note.

ASSUMPSIT upon a promissory note for $161,94, dated April 6, 1847, executed by the defendants, by the name of their firm of Cutting, Hindman & Co., and made payable to William Frazier, or bearer, on demand with interest. Plea, the general issue, and trial by jury, December Term, 1849,—REDFIELD, J., presiding.

On trial, the plaintiff having given in evidence the note declared upon, the defendants claimed to have paid the note, and proved, that some time previous to October 11, 1847, William Frazier, the payee of the note, was indebted to the Bank of Newbury upon a promissory note for $259,00, which was also signed by the defendant Hindman, as surety for Frazier, and that, the bank note having become due and being unpaid, the wife of Frazier, on the eleventh of October, 1847,—Frazier being then sick and unable to attend to any business,—requested Hindman to pay the bank note, and agreed, as a part consideration, to surrender to him the note in suit; that accordingly, on that day, Hindman paid the bank note, and called upon Mrs. Frazier for the note in suit; and that she looked among her husband's papers for the note, for the purpose of surrendering it to Hindman, but, not being able to find it, agreed to deliver it to him, as soon as it should be found. It appeared, however, that Frazier had delivered the note to the plaintiff, August 20, 1847, as collateral security for the payment of $116,00 for a horse, which he had purchased of the plaintiff; and on the twenty third of November, 1847, the plaintiff notified Hindman, that he held the note, and required payment, and Hindman informed him, that he had paid the note, and declined paying it to the plaintiff. And it did not appear, that the plaintiff gave to the defendants any notice of the transfer, until November 23, 1847.

The plaintiff read in evidence several depositions,—which were objected to by the defendants, but admitted by the court,—from which it appeared, that the latter part of August, 1847, and after the transfer to the plaintiff of the note in suit, Frazier was taken sick at his residence in Lyman, New Hampshire, and was ever after unable to attend to any business; that at times his mind was wander-

ing, and he was at all times unconscious of what was transpiring, until his death, which occurred November 9, 1847. It farther appeared, that while Frazier was so sick, he was taken care of by his wife; that she took an oversight of the farming and other business of her husband, to some extent; that she collected and paid some of his debts; that on one occasion she sent some of his demands to Massachusetts for collection by one John Hindman, and furnished him with money for his expenses, and that he collected $115,00, and paid it to Mrs. Frazier; and that there was no other person, except Mrs. Frazier, to take charge of his business, while he was sick. It farther appeared, that Mrs. Frazier was not expressly authorized, or requested, to do any business for her husband, and that he was himself wholly incapable, from the nature of his disease, of transacting or comprehending any business, from before the time his wife made the above mentioned arrangement with the defendant Hindman until his death. It appeared, that the defendant Hindman obtained an allowance against the estate of Frazier for the money paid by him to the bank, but protesting that it was for the benefit of the plaintiff,—which the plaintiff repudiated altogether.

Upon these facts the defendants insisted, and requested the court to charge the jury, that the defendants were entitled to recover,—that the transaction amounted to a payment of the note in suit,—that Mrs. Frazier ought to be presumed and deemed the agent of her husband to transact the business of receiving payment of the note in suit and paying the bank note,—and that, in any event, the plaintiff was only entitled to recover the sum of $116,00 and interest, for the payment of which the note was pledged to him.

But the court directed the jury to return a verdict for the plaintiff, for the whole amount of the note. Exceptions by defendants.

*A. Underwood* for defendants.

1. Under some circumstances the wife is to be deemed and presumed the agent of her husband, when there is no other person to transact his business. This presumption arises from the peculiar relation they sustain, and is not to be controlled, or rebutted, by proof of a want of express authority. This presumption arises, when the husband is absent,—and why not much more so, when sick? Although the wife may not be considered authorized to make con-

Sawyer *v.* Cutting et al.

tracts to create and impose on him new and important obligations, yet she may discharge obligations already created, and do such acts, as are clearly for his benefit, and which he ought to do.   Hence we insist, that Mrs. Frazier might and ought, for and on behalf of her husband, to pay and discharge the bank note, and she would have the corresponding right to use his money for that purpose, and it would make no difference, that she took it from those indebted to him, or procured them to pay his indebtedness.  *Felker* v. *Emerson,* 16 Vt. 653.  1 Swift's Dig. 31, 32.  2 Conn. 638.  Reeve's Dom. Rel. 80, 81.  *Emmett* v. *Norton,* 34 E. C. L. 503.  1 Selw. N. P. 269.  1 Stephen's N. P. 714, 715.  *McKinley* v. *McGregor,* 3 Whart. 369.  *Shoemaker* v. *Kunkle,* 5 Watts 107.  *Church* v. *Landers,* 10 Wend. 79.

2.   When the plaintiff received the note in suit, it was over due, and subject to all equities existing between the defendants and Frazier; and these equities are to be considered as of the time, when notice of the transfer was given.  Chit. on Bills 284.  *Camp* v. *Scott,* 14 Vt. 387.  *Campbell* v. *Day,* 16 Vt. 558.  *Sargeant* v. *Sargeant et al.,* 18 Vt. 371.  *Walbridge* v. *Kibbee,* 20 Vt. 543.

3.   The court should have excluded the depositions; it was not competent for the plaintiff to rebut the presumption of the wife's authority, by proving Frazier's sickness and a want of express authority conferred on her by her husband.

4.   The plaintiff was not entitled to recover the whole note.

*C. B. Leslie* for plaintiff.

1.   In order that the husband be bound by the acts of the wife, she must be proved to be his agent.  Chit. on Cont. 130.  1 Sw. Dig. 31.  1 Bac. Abr., *Baron & Feme* H.  1 Stephen's N. P. 712–716.  16 Vt. 390, 464.  12 Vt. 510.  Reeve's Dom. Rel. 79.  1 Bl. Com. 357.  Under certain circumstances, and in the transaction of the domestic concerns of a family, proper for a wife to transact, she may be *presumed* to be the agent of the husband; but this presumption may be removed by proving his express dissent.  But if she steps beyond the province of a wife, and undertakes the proper business of the husband, her acts are not binding, unless his express assent be shown.  2 Steph. N. P. 715, n. *d.*  2 Kent 146.  1 Sw. Dig. 31.  Reeve's Dom. Rel. 79.  Mrs. Frazier had no authority to

XXIII.     62 .

act as the agent of her husband, nor was he capable of delegating any to her, or of ratifying her acts; and all presumption of implied agency is repelled by the facts in the case.

2.  The defendant Hindman paid the bank note long after Sawyer became the *bona fide* holder of the note in suit, and after he had notice, that it could not be found.  This was sufficient to put him upon inquiry, and ought to be deemed notice of its transfer, in analogy to other cases.  17 Vt. 329.

3.  If the plaintiff is entitled to recover, he is entitled to recover for the whole amount of the note.

The opinion of the court was delivered by

KELLOGG, J.   To determine whether the defendants were entitled to the instructions claimed at the trial below, and consequently to a verdict, it becomes necessary to inquire, whether the facts found justify the conclusion, that the contract between Mrs. Frazier and Hindman, respecting the payment of the bank note by Hindman and the giving up the note in question, was originally made with the assent of Mr. Frazier either *express, or implied,* or was *subsequently adopted by him.*   For the power of the wife to bind her husband by her contracts is founded upon the sole ground of agency, she having, as wife, no original and inherent power to bind him by any contract made by her.  *Benjamin* v. *Benjamin,* 15 Conn. 347.   *Lane* v. *Ironmonger,* 13 M. & W. 368.   *Freestone* v. *Butcher,* 38 E. C. L. 269.

Hence it is incumbent upon the defendants, in establishing their defence, to show that the contract, between Mrs. Frazier and Hindman, upon which the defence rests, was authorized by Mr. Frazier. This authority may be general, or special, express, or implied.   And the act of the wife, though unauthorized at the time of its performance, may be rendered valid by a subsequent ratification by the husband.   The wife, whether the husband is absent, or at home, sick, or in health, is not to be presumed *his agent generally,* or to be intrusted with any authority in relation to his affairs, other than that, which it is usual and customary to confer upon the wife.   That the arrangement in question, entered into with the defendant Hindman, does not fall within the ordinary powers of a wife in the management of the domestic affairs of her husband, is quite obvious.

The act of Mrs. Frazier, the validity of which is in question, de-

Sawyer v. Cutting et al.

rives no aid from the law, which, under certain circumstances, authorizes the wife to bind her husband for necessaries for herself and family. The arrangement was not made for any such purpose and consequently can only be sustained upon the ground of the husband's assent. It is not pretended, that Mrs. Frazier had any *express* authority from her husband to make the arrangement, and the facts preclude all presumption of any implied assent on his part. For at the time of her making the contract with Hindman, Frazier was incapable of doing any business, his mind was wandering, and he was unconscious of what was transpiring, and he continued in that situation until his death. There consequently could have been no subsequent ratification of the contract by Frazier.

But it is said, that, under the circumstances of this case, it should be *presumed*, that Mrs. Frazier acted as the agent of her husband in making the contract with Hindman, inasmuch as there was no other person to transact his business,—that this results from the necessity of the case,—and that the presumption is not to be controlled by proof of want of *express authority*. Should this proposition be admitted, it would seem to follow, as a necessary consequence, that the wife, in all cases like the present, would be invested with a general and unlimited authority as to all her husband's affairs. We know of no authority to sustain such a doctrine. That Mrs. Frazier, under the circumstances, was justified in taking care of the property and providing necessaries for the family is conceded. To that extent she might well be regarded as the head of the family. But this would by no means constitute her the *general agent* of her husband and authorize her to transact his business generally,—to transfer his property and pay his debts. ⬛ tend the powers of the wife, as claimed in the present case, ⬛ be without precedent, as it seems to us.

The case of *Felker* v. *Emerson*, 16 Vt. 653, was much relied on at the argument, as sustaining this defence; but we think it affords it no support. Emerson, as an officer, attached the property of Felker, including his cattle and hay, at the suit of a creditor of Felker, who was then absent from home and had been for two months. Felker left his wife and minor children upon the farm with the property attached. After the attachment, Emerson, with the consent of Felker's wife, fed the hay in controversy to the cattle. Felker, up-

on his return, sued Emerson for the hay so fed to the cattle; and it was held, " that Felker was so far interested in the support of the cattle, that it must be considered a matter fairly within the general scope of his business, which was left in charge of his wife;—that she must, in his absence, be considered the head of the family, and his general agent for all the *purposes of the business left under her charge and control."* If the cattle had not been attached, it would clearly have been the duty of Felker's wife to cause the hay to be fed to the cattle; and it would seem from the case, that the court considered, that the cattle, after the attachment, were to be kept at the expense of Felker. It was therefore simply an assent by the wife, that the hay should be fed to the cattle, which the husband must have expected would be done, when he left home. The attachment of the cattle did not remove Felker's interest in their support; and hence it might well be said to fall within the scope of her agency.

In *Church* v. *Landers,* 10 Wend. 79, where the wife, in the absence of her husband, had let a horse to a neighbor, and upon the return of the husband he brought trover for the horse, the action was held not to lie, for the reason, as the court say, "that in the absence of the husband, the wife must be considered as having a general authority to exercise *the usual* and *ordinary control* over his property, which must be possessed by some one; unless it appeared he had constituted some other person his agent for that purpose." The court evidently treat the act of lending the horse as one ordinarily exercised by the wife in the absence of the husband.

The case of *Rotch* v. *Miles,* 2 Conn. 638, is entirely unlike the case at bar. There the husband deserted his wife, leaving her keeping a boarding house for the support of herself and family, and the court held, he was liable for her contracts made in the course of such business. The decision is put upon the ground, that the husband, with full knowledge of the business in which his wife was engaged, *permitted her* to prosecute the business for the support of herself and children, and from this his assent might well be inferred, and that consequently he was liable for her debts, contracted in the business. This does not militate against the ground we assume in this case.

Again, it is urged, that inasmuch as the plaintiff received this

note of Frazier when it was overdue, he took it subject to all equities ; and that the defendants are entitled to avail themselves of any matter of defence, which they could have done, had the suit been brought by Frazier.    This may be admitted, and yet, I apprehend, the defence would not avail them.   For in order to entitle these defendants to treat the payment of the bank note by Hindman, as so much payment upon the note in suit, it is necessary to show, that Mrs. Frazier had *authority* to make such arrangement with Hindman.    This, however, the defendants fail to do.    Upon the question of the authority of Mrs. Frazier to make this contract the whole defence depends, and it seems to us, that the testimony has no tendency to prove such authority.

It is farther objected, that the court erred in admitting certain depositions.    Inasmuch as the defendants *claimed*, that the circumstances were sufficient to raise the presumption, that Mrs. Frazier was authorized by her husband to make the arrangement in question, the depositions were clearly admissible, to rebut such presumption.    Selw. N. P. 288.    *Benjamin* v. *Benjamin*, 15 Conn. 355. For if any such presumption was raised by the testimony, it was a presumption of *fact*, and therefore was subject to be rebutted.

It is farther objected, that the plaintiff was not entitled to recover the amount of the note in suit.    It appears to us, that this objection is unsound.    If the plaintiff is entitled to recover any thing, we do not see, why he is not entitled to recover the amount of the note. The entire note was transferred to him, and by the transfer the plaintiff acquired all the interest of Frazier in the note;—though, as between the plaintiff and the estate of Frazier, he will be bound to account for the difference between his demand against Frazier and the amount of the note of Frazier against the defendants.    The plaintiff will hold the surplus in trust for the estate.    But this in no manner affects the liability of the defendants in this suit.    Their defence having failed, they must be liable to the plaintiff for the amount of the note.    And the same result would follow, if the note in suit had been transferred to the plaintiff solely for the purpose of collection.            The judgment of the county court is affirmed.