## SAVAGE VS. DAVIS.

A wife has no power, by virtue of the marital relation merely, to bind her husband by any contract made by her ; but he is bound by such contracts only where it is shown, or the law presumes, that she acted as his agent.

Though the law will in some cases presume the wife to have been the agent of her husband, where no such presumption would exist as to another person, or will imply a larger authority to the wife than to another agent, such presumptions are founded upon the fact that it is *usual* to permit the wife to act in such cases.

The wife is not presumed to be the agent of the husband generally, even when he is abroad, nor to be entrusted with any other authority as to his affairs than that which it is customary to confer upon the wife.

In an action for injuries done to the plaintiff's horse while in defendant's possession, where the complaint alleged an unlawful taking, and the defense was that such possession was under a contract of hire entered into with the wife of plaintiff, who acted as his agent:  *Held*, that the fact of such agency, its nature and extent, might be inferred from the *circumstances* in evidence ; and it was for the jury to determine from all the evidence, whether the wife had authority to make the contract in question, and if not, whether it was subsequently ratified by the husband.

It appearing in this case that the husband was absent from home but a day or two, the law would not *presume* that the wife was authorized to enter into such contract of hire as his agent during his absence.

A witness testified that, the winter before the time mentioned in the complaint, the plaintiff wanted him to take the horse and keep it until spring, and that witness took it accordingly, and kept it five weeks, when it was taken away from him (but by whom did not appear) ; that witness went after the horse to a certain stable, and plaintiff's wife was there.  *Held*, that the court did not err in refusing an offer to prove further by the witness what was said and done by plaintiff's wife at that time, in the absence of her husband, or that she refused to let the horse go—such evidence not having any tendency to prove that the plaintiff

recognized her authority to act as his agent in controlling or disposing of the horse.

If the court erred in not submitting the question of the wife's agency to the jury, such error could not have injured the defendant, the complaint alleging that the injury was caused by defendant's negligence, and the jury having been instructed that he was liable only for want of ordinary care—which is the degree of care required of a bailee for hire.

APPEAL from the Circuit Court for *St. Croix* County.

Action for damages for the unlawful taking from the premises of the plaintiff, by the defendant, of a horse belonging to plaintiff, and for the improper and negligent feeding and driving of the same, which are alleged to have caused its death. The defendant denied both the unlawful taking and the improper and negligent use, and alleged that he hired the horse of the plaintiff.

On the trial, the evidence showed that plaintiff left home at six o'clock on the morning of the 3d of June, and returned at 11 A. M. the next day; that defendant called at the house on said 3d of June, and obtained the horse by permission of Mrs. Savage, plaintiff's wife; and that when plaintiff returned home on the 4th, he found the horse " very sick." The plaintiff, as a witness in his own behalf, testified that when he was away his wife took care of the horse, but he did not know that she had ever let it.—The defendant moved for a nonsuit, on the ground that the complaint was for two distinct and inconsistent causes of action blended together, an unlawful taking and a negligent use, and that the unlawful taking had not been proven. Motion denied. The defendant testified, in his own behalf, that on the occasion referred to, he told the plaintiff's wife that he wanted to *hire* the horse, and she said he could take him. One Brockbank testified: " Last winter the plaintiff wanted me to take the horse and keep him until spring. I did take him, and kept him five weeks. I did not take him to plaintiff's, but he was taken away from me. I went after him, to Moore's stable. Found plaintiff's wife was there." Here defendant offered to prove by the witness, what was then said

and done by the wife in the absence of her husband, and that she refused to let the horse go; but the evidence was ruled out.—There was also proof of the value of the horse, and conflicting evidence as to whether his death was caused by improper feeding and driving on the part of the defendant, or by disease of the heart.—The court instructed the jury as follows: "1. The wife is not the agent of her husband, in his absence, to dispose of or let his property; and has no more authority to do so than a stranger, in the absence of any authority from the husband. Such authority may be inferred from the prior acts of the wife acquiesced in or approved by him, as fully as from positive directions. 2. If the jury find that the defendant, in driving and feeding the horse, did not exercise that ordinary care which a prudent man would exercise, under the circumstances, in driving and feeding his own horse, and that the horse came to his death from such lack or neglect on the part of the defendant, then the defendant is liable in damages to the plaintiff to the amount of the value of the horse; and the defendant was bound only to such ordinary care. On the other hand, if the horse died from a disease of the heart, and the alleged improper driving and feeding did not contribute to his death, in that case the jury will find only nominal damages for the unlawful taking. 3. The jury are to take into consideration their own experience and knowledge as men, in determining the questions of fact from the evidence." These instructions were excepted to by the defendant. The court refused to give the following instructions asked by the defendant: "1. If the defendant took the horse with the consent of the plaintiff's wife, and the plaintiff was absent, and the wife had the care of the horse during such absence, and the plaintiff had left no other special agent in charge of his property which must be left in the possession of some one, then the wife must be considered as having a general authority to exercise the usual and ordinary control over the plaintiff's property; and the taking of said horse was not unlawful, un-

less the wife had been prohibited from loaning the horse, and such prohibition was known to the defendant, or so published as to be generally known.  2. If the defendant took the horse lawfully, and without notice as to the particular manner in which he had been kept, and with no directions as to how he should be driven and fed, then the defendant was bound to use only such ordinary care in driving and feeding the horse as a prudent man would exercise in driving and feeding a well horse.  3. If the jury believe that the defendant used ordinary care in the use, driving and feeding of the horse, then they will find for the defendant.  4. If the jury believe that the death of the horse was produced by some other cause than the driving and feeding of him by the defendant, they will find for the defendant."

Verdict for the plaintiff; motion for a new trial denied; and judgment upon the verdict; from which the defendant appealed.

*H. L. Humphrey*, for appellant:

1. The court erred in not submitting the question of the agency of the wife to the jury.  2 Bright on H. & W., 9 ; 1 Parsons on Con., 293, note L, and 288 ; *Hopkins v. Mollinieux*, 4 Wend., 465.  2. Agency of the wife may be inferred from a variety of circumstances.  1 Parsons on Con., 287 ; 2 Bright, 6 ; Reeve on Dom. Rel., 80, 81; *Riley v. Suydam*, 4 Barb., 222. Thus, where the husband in his absence leaves his property in the care and under the control of the wife, he should not be allowed to ignore her authority in exercising the ordinary control over the same, but should be bound by her acts.  Peake on Ev., 17 ; *Church v. Landers*, 10 Wend., 80; 2 Starkie on Ev., 33, note U; 1 Parsons on Con., 288, note B.  3. If the jury found that the horse was improperly fed and driven, the defendant would still have been entitled to a verdict unless they also found an unlawful taking.  Plaintiff could not complain for an unlawful taking and using of the property, and then recover on proof of a taking and using for hire.  Even

if the verdict shows that the jury found the unlawful use, the plaintiff was still injured by the language of the court, which assumed the fact of an unlawful taking instead of leaving that question to the jury.    4. The court erred in rejecting the testimony of Brockbank, which tended to show the acquiescence of the plaintiff in the acts of his wife exercising control over this property.

*Clough & Baker*, for respondent.

*By the Court*, COLE, J.   It is objected that the court erred in excluding the testimony of the witness Brockbank.    But what bearing the matter offered to be proven by this witness would have upon the question whether the wife had general or special authority from her husband to hire the horse to the defendant, we do not readily perceive.    It is claimed that the evidence was a circumstance tending to show that the husband acquiesced in and approved of the acts of the wife in controling the property.    But how does it tend to show this?    In the first place it does not appear that the wife did in any way control the disposition of the horse at that time.    The offer was to prove what the wife said and did when the witness went to Moore's stable to get the horse, and that she refused to let the horse go.    But for aught that appears in the case, the husband himself might have taken the horse to Moore and left it there to be kept.    It does not appear that the wife controlled the property, or that the husband ever acquiesced in or approved of what his wife said or did at that time.    The proof offered appears to us to be entirely impertinent to the issue, and was rightly excluded.    A wife may undoubtedly act as the agent of her husband, and in that character transact his business, control his property, and make contracts in respect to it which will bind him.    This agency, its nature and extent, and whether it includes the particular contract, may, as in other cases, be inferred from a variety of circumstances.    It is a question for the jury to determine from all the evidence, wheth-

er the wife had authority to do the act or make the contract in question, or whether her act, unauthorized at the time of its performance, was rendered valid by a subsequent ratification by the husband. In the management of household affairs it is said that it will be presumed, until the contrary appears, that she acts as the agent of her husband (*Pickering v. Pickering*, 6 N. H., 120); but her power to bind her husband by her contracts rests upon the sole ground of agency, she having as wife no original and inherent power to bind him by any contract made by her. *Sawyer v. Cutting et al.*, 23 Vermont, 486; *Leeds v. Vail*, 15 Pa. St., 185; *Benjamin v. Benjamin*, 15 Conn., 347; *Lane v. Ironmonger*, 13 M. & Wels., 368; *Freestone v. Butcher*, 9 Carr. & Payne, 643 (38 Eng. C. Law, 269.) In certain cases the law implies an authority on the part of the wife to charge her husband in procuring necessaries for herself and family, growing out of his obligation to support her. And in *Benjamin v. Benjamin, supra*, where there is a full and satisfactory examination of the law bearing upon this point, the court say: " It appears, nevertheless, from the authorities, that the law will, in some cases, presume the wife to be the agent of her husband, where no such presumption would exist as to another person; and also will in some cases imply a larger authority to the wife than to an ordinary agent; and this, perhaps, whether the husband be absent from home or not; and that in other cases, when he is absent, a presumption would arise that his wife has authority to act in his behalf which would not exist if he were at home. But it will be found that in all such cases these inferences are founded on the fact that it is usual and customary to permit the wife to act in such cases. It is a presumption arising from the state of society." 15 Conn., p 357. But that case emphatically negatives the position that by virtue of the marital relation the wife possesses an original power to bind her husband by her contracts; and Judge STORRS says he has found no adjudged case, " which sanctions the doctrine that the wife, whether the husband is abroad or

at home, is presumed to be the agent of the husband generally, or to be entrusted with any other authority as to his affairs, than that which it is usual and customary to confer upon the wife." And while he thinks the case of *Church v. Landers*, 10 Wend., 79, furnishes no exception to the rule, yet it seems to me that the decision in Wendell is somewhat in conflict with the principles laid down in *Benjamin v. Benjamin*, and the authorities above referred to. But whether the ruling in *Church v. Landers* can be sustained on any sound principle, we will not stop to enquire, as we think, even if it be good law, it cannot apply to a case like the present. Here it appears that the husband was absent from home but a day or so and to say that, in such a case, and solely because the husband was absent, the wife must be considered as having a general authority from the husband to let a horse to hire, is going beyond the rule there laid down, and is extending the authority of the wife by implication or presumption farther than the principles of law will warrant. The law, then, did not, from the mere absence of the plaintiff, imply that the wife had authority to make the contract, or to let the horse to the defendant for hire; and it was therefore incumbent upon the latter, setting up such a contract, to show that she had power to make it, or lay before the jury such facts and circumstances as would enable them to presume that she was authorized to make it.

It is claimed, however, that the court below erred in not submitting the question of agency to the jury. Even if it be assumed that this objection is sustained by the record (which is not very clear), still we cannot see how the error of the court could have possibly prejudiced the defendant. For the court expressly told the jury, in substance, that the defendant was only liable for the exercise of ordinary care in using and feeding the horse—a degree of diligence which the law imposes in an ordinary bailment for hire. Thus, by instructing the jury that the defendant would be responsible for the loss of the

horse only in case he failed to exercise that ordinary care which a prudent man would, under the circumstances, exercise in driving and feeding his own horse, the court assumed that the wife had authority to let the horse as the defendant claimed. If the wife had not authority from the husband to let the horse, then the defendant was a wrong doer, and responsible for the loss occasioned by his wrongful act. The court gave some instructions which, as abstract propositions of law, are doubtless open to criticism, but we cannot see that the defendant could have been injured by them. The plaintiff claimed that the defendant had wrongfully taken the horse, and killed it by immoderate and negligent driving. His evidence was directed to sustain such a cause of action. The defendant insisted that he hired the horse of the wife, who was authorized by the plaintiff to let it for hire, and that he was guilty of no negligence in using and feeding it. If the jury believed that the plaintiff had made out his case, they were bound to find for him in any event. On the other hand, the authority of the wife being assumed, the jury could only find for the plaintiff in case the evidence showed that the defendant had not exercised common care and diligence.

We believe these observations dispose of the exceptions arising on the various instructions given and refused, and therefore they will not be more particularly noticed.

On the whole record we think the judgment must be affirmed.