WOODRUFF & BEACH IRON WORKS *vs.* WELLES ADAMS AND
ANOTHER.

The defendants contracted with *L* to furnish and set up in their mill certain machinery at a price agreed. *L* purchased the machinery of the plaintiffs on the credit of the defendants, falsely representing that he was employed by them and authorized to make the purchase for them. The machinery was placed by *L* in the defendants' mill and was so fixed in it as to become a part of the mill. The defendants in ignorance of *L's* fraud paid him the price agreed and used the machinery in connection with their mill. The plaintiffs afterwards, on learning the facts, demanded payment of the defendants, which was refused, and they thereupon brought an action of trover for the machinery. Held (regarding the parties as neither in fault,) —1. That as the articles had become incorporated in the mill so as to be a part of the real estate, the use of them in that state by the defendants did not constitute a conversion for which trover would lie. 2. That the plaintiffs had lost their title to the articles in question, and that the defendants as owners of the real estate were owners of the same.

And held that, if the articles had remained personal property, a demand would have been necessary before bringing trover.

Whether, if the defendants had not paid *L* before his fraud was discovered, they might not in some form be compelled to make compensation to the plaintiffs for the benefit which they would receive from the property: *Quære.* The civil law seems to compel compensation in similar cases.

TROVER for sundry articles of machinery; brought to the Superior Court in Hartford County, and tried on the general issue closed to the court, before *Sanford, J.* The court found the following facts:

VOL. XXXVII.—30

In the summer of 1863 the defendants were building a grist-mill in the town of Wethersfield.  By a contract between them and one Martin Luther, a mill-wright, the latter agreed to furnish, and place in the mill, the running machinery therefor, at the agreed price of three thousand dollars.  The contract price was paid as agreed, by the defendants to Luther, in several payments as the work progressed.

Before commencing work under his contract Luther falsely represented to the plaintiffs that the contract had been abandoned, and that he was to do the work for the defendants by the day, and that the machinery to be used for the mill, and to be furnished by the plaintiffs, should be charged to the defendants ; and he did then order of the plaintiffs, upon the credit of the defendants, the articles and machinery described in the declaration, and all without any authority or knowledge on the part of the defendants.  The plaintiffs afterwards delivered, from time to time, the articles as ordered to the servants of Luther, but upon the credit of the defendants, and supposing Luther was building the mill by the day, and that he was authorized to pledge the credit of the defendants for the payment.

The articles so delivered by the plaintiffs to Luther, were placed by Luther in working order in the mill of the defendants, where, (with the exception of a few small articles worn out by use,) they have ever since remained, and been used by the defendants as their own property, as part of the mill and inseparable from it.

After most of the articles had been delivered to the servants of Luther, as above mentioned, Welles Adams, one of the defendants, called upon the plaintiffs at the request of Luther for some few articles of machinery then undelivered, and then, for the first time, learned that the articles had been delivered upon their credit and charged to them, and then, for the first time, were the plaintiffs advised that Luther had no authority to order the articles on the credit of the defendants.  At this time the plaintiffs informed the defendants that they should look to them for payment, and the defendants informed the plaintiffs that they would not be responsible for

the purchase of the articles. The articles for which said Adams had called were then delivered to him, and by him taken away and delivered to Luther.

The plaintiffs, soon after the completion of the mill, brought an action of assumpsit against the defendants for the price of the articles, and recovered judgment thereon for certain of the articles, to the amount of $92, which judgment was paid by the defendants. The plaintiffs then brought their present suit, before bringing which no claim or demand was ever made by the plaintiffs upon the defendants for the property.

Upon the foregoing facts the plaintiffs claimed that the law was so that they were entitled to recover the value of the articles converted by the defendants. But the court held that the law was so that the plaintiffs could not recover, and rendered judgment for the defendants. The plaintiffs moved for a new trial.

*Hyde*, in support of the motion.

1. The plaintiffs have never parted with the title to the property, except as to certain of the articles delivered directly to the defendants, and for which a recovery was had in the former suit. If any contract was made by the plaintiffs, it was with the defendants. But this contract was absolutely void, because Luther, who professed to act on their behalf in making it, had no authority, and the defendants refused to ratify it when informed of the circumstances; so no title passed from the plaintiffs to the defendants. And no title passed from the plaintiffs to Luther; for they never sold the goods to Luther. The articles, it is true, were delivered by the plaintiffs to Luther, but only because he was supposed to be the servant of the defendants; and he received them in his pretended character of servant. Luther having obtained possession of the goods by false representations, his possession was tortious, and as he had no color of title in himself, he could convey to the defendants nothing except his tortious possession. *Kingsford* v. *Merry*, 1 Hurlst. & Nor., 503 ; *Higgons* v. *Burton*, 21 Jurist, Supplement, 188 ; *Hardman* v. *Booth*, 1 Hurlst. & Colt., 803 ; *Decan* v. *Shipper*, 35 Penn. S. R., 239; *Ballard* v. *Burgett*, 40 N. York, 314

2.  A demand of payment for the goods, made by the plaintiffs, was sufficient, if any demand was necessary. *Thompson* v. *Shirley*, 1 Esp., 31 ; *LaPlace* v. *Aupoix*, 1 Johns. Cas., 406.  But in this case no demand was necessary.  The possession of Luther being tortious, taking possession from him by the defendants was equally tortious as against these plaintiffs, and amounted to a conversion ; and especially is this true in this case, when it is found that these articles were placed in the mill of the defendants by Luther, in pursuance of a contract with the defendants ; and the defendants have continued to use the property as their own after notice of the plaintiff's rights.  *Stanley* v. *Gaylord*, 1 Cush., 536, 545 ; *Gilmore* v. *Newton*, 9 Allen, 171 ; *Hoffman* v. *Carow*, 22 Wend., 285 ; *Fisk* v. *Ewen*, 46 N. Hamp., 173 ; *Lovejoy* v. *Jones*, 10 Fost., 164 ; *Hotchkiss* v. *Hunt*, 49 Maine, 213 ; *Grant* v. *King*, 14 Verm., 367 ; *Bucklin* v. *Beals*, 36 id., 653.

*H. H. Barbour* and *Robinson*, contra.

1.  If there was any contract of sale, though full of false representations and tainted with gross fraud, it must have been disaffirmed before the suit could be brought against a *bonâ fide* purchaser of the fraudulent vendee.  *White* v. *Garden*, 10 Com. Bench, 919 ; *Stevenson* v. *Newnham*, 13 id., 285, 302 ; *Hoffman* v. *Noble*, 6 Met., 68 ; *Root* v. *French*, 13 Wend., 570 ; *Wait* v. *Green*, 36 N. York, 556 ; Roscoe N. P., 606. Instead of electing to rescind the contract, the plaintiffs decline to do so, and even confirm it.  1st.  By letting the defendants have goods after Luther's misconduct is exposed. 2d.  By bringing suit for the credit in assumpsit, thus consenting to the defendants' use of the goods.  3d.  By not filing a mechanics' lien upon the real estate under the statute. They have said that there was a contract, and have allowed the defendants to pay Luther $3,000 for these very goods, and are now estopped from saying that there was no contract at all.  They must now treat it as a fraud upon them, and look to the party who has defrauded them.

2.  The purchase by the defendants of Luther, the party in possession, being for value, it is clear that, in Connecticut at

Woodruff & Beach Iron Works *v.* Adams.

least, a demand must have been made by the plaintiffs before trover could be maintained. *Parker* v. *Middlebrook,* 24 Conn., 207 ; *Luckey* v. *Roberts,* 25 id., 489. No claim or demand of any kind was ever made.

3. The property has been hopelessly confused by the laches of the plaintiffs. It has even become a part of the realty. To hold these defendants in such a case would be a bad precedent. If the dwelling houses and mills of citizens may be assaulted by suits in trover for the lumber, and paint, and nails, and mortar, which compose them, because the contractors who built them and who have received their full pay for them with a profit, happened to defraud the merchants from whom they were originally obtained, no person would be safe in making a contract, or even in buying a residence or manufactory until it was six years old, and he could invoke the aid of the statute of limitations against actions on the case.

SEYMOUR, J. The property which is the subject of this suit was obtained from the plaintiffs by the fraudulent representations of Luther, who falsely claimed to be the servant of the defendants and to be authorized to purchase the goods on the defendants' credit. Luther in fact had no such authority. The defendants had contracted with him that he should furnish and place in their mill the running machinery therefor at and for the agreed price of $3,000. This contract price had been paid as agreed in several payments as the work progressed, and Luther had practiced a fraud upon the defendants by putting into their mill as his own the articles which he had fraudulently obtained from the plaintiffs. · Both the plaintiffs and defendants acted in good faith, and one or the other of them must suffer from Luther's fraud.

It has been suggested in the discussion of the question which of the two shall suffer, that some negligence is imputable to the plaintiffs in giving credit to the naked word of Luther that he was authorized to purchase the goods on the defendants' credit, and that the plaintiffs according to the usual course of business should have required written author-

ity, or have been assured by the defendants themselves of Luther's power to act for them, and that the plaintiffs having thus given an unusual credence to Luther's word ought to be made to suffer for his fraud, rather than the defendants who paid Luther as contractor the contract price for his labor and materials according to the natural and usual course of business.

The case however was mainly discussed at the bar upon the basis that both parties were equally innocent and equally free from blame, and that the loss must fall where the principles and analogies of the law cast it, without reference to differences between the parties founded on the negligence or want of proper caution of either of them; and we prefer to place our decision upon the general principles of law applicable to the case, rather than upon merely equitable considerations.

The action is trover, and the plaintiffs must of course prove that the property was theirs and was converted by the defendants to their own use.

Is such conversion by the defendants proved? Luther was undoubtedly guilty of a conversion, but Luther was not the servant or agent of the defendants. A contractor employed as he was is in no sense the servant of the employer, so as to render the employer liable for the contractor's acts. Sherman & Redfield on Negligence, § 79, and cases there cited. No claim was made by the plaintiffs' counsel that the defendants could be charged in this action with the acts of Luther.

The finding of the Superior Court is that the articles which are the subject of the suit "were by Luther in pursuance of his contract placed in working order in the mill of the defendants, where (with the exception of a few articles worn out by use,) they have ever since remained and been used by the defendants as their own property, as part of said mill and inseparable from it."

It is this use of the property by the defendants which is relied on as a conversion.

It will be noticed that the finding is definite, that the articles became an inseparable part of the mill.

A list of the articles is found in the declaration. As to

most of them it is easy to see that they might naturally have become thus incorporated with the defendants' property. In regard to some of them it would seem from their nature that perhaps they might be identified as those furnished by the plaintiff, and be separated from the building. But we take the finding to be, as we have no doubt it is, correct, and by that finding it appears that by the act of Luther under his contract the articles for the alleged conversion of which the suit is brought were incorporated into the defendants' mill as part of it and inseparable from it. The property by thus becoming part of the mill became part of the real estate. Its character was thus changed from personal to real; and the change was by no act of the defendants nor by the act of any one for whose conduct they are responsible. It was not until after this change that the defendants did the acts for which this action is brought.

Conceding then that the plaintiffs' title continued down to the time that the personal became real estate, the questions arise:—1. Does their title continue, so that they can follow the property in its changed form? 2. Is the use of these articles by the defendants as part of their mill, in the use of the mill itself, a conversion for which the action will lie?

The spirit of the common law forbids as a general rule that the owner of property should lose his title without his consent, and some of the rules of the civil law whereby title is changed by a mere change in the form and character of the property may not be admitted as part of our law; but the common law admits such loss of title in many familiar cases. If by natural causes the soil of my land is carried upon my neighbor's and becomes inseparably mingled with it, my soil is lost to me, and if no fault or neglect of his caused the avulsion I have no action at law against him, however much his land may be benefited. And even if, by my own wrongful act, the personal property of another becomes inseparably incorporated with my real estate, the property may be changed so that the owner cannot follow it, but is left to his remedy by action at law; as if I use another's oil or lead in painting my house, or his nails, screws, brick or lime in building.

In the case under consideration the plaintiffs' property became incorporated with and part of the defendants' real estate by the act of a third person, Luther. Are the plaintiffs then any longer owners of the articles in dispute ? We think not.

A case very similar to this was decided by the highest court in the state of New York, reported in 5 Hill, 116, and in 7 Hill, 529, *Fryatt* v. *The Sullivan Company.* The reporter's head note is as follows: "Where one having hired the use of certain personal property, wrongfully converted it by annexing it to and making it a part of his real estate, and then sold the real estate to a third person who had no notice of the facts, held that the party injured could not reclaim his property from the purchaser, but his only remedy was by action against the wrong doer." And Bronson, J., giving the opinion of the court, says, "A man cannot maintain an action against me, by proving that the person from whom I purchased my house wrongfully took or converted the brick, stone, timber, lime, or other materials of which my house was constructed, nor can he enter and tear down my house for the purpose of regaining that portion of it which once belonged to him."

A similar case came before the Supreme Court in Massachusetts, reported in 22 Pickering, 559, *Peirce* v. *Goddard,* and was decided in the same way. Wilde, J., in giving the opinion of the court says: "It is laid down by Malloy (De Jure Maritimo, lib. 2, chap. 1, § 7,) as a settled principle of law, that if a man cuts down the trees of another, or takes timber or plank prepared for the erecting or repairing a dwelling house, nay though some of them are for shipping, and builds a ship, the property follows not the owners but the builders; and Chancellor Kent says in his Commentaries, (2 Kent Com., 360, 61,) if *A* builds a house on his own land with the materials of another, the property in the land vests the property in the building by right of accession, and the owner of the land would only be obliged to answer to the owner of the materials for the value of them. This principle is fully sustained by the authorities. In Broke (tit. *Property,* pl. 23,)

it is said that if timber be taken and made into a house it cannot be reclaimed by the owner, for the nature of it is changed and it has become a part of the freehold. In Moore, 20, it was held that if a man takes trees of another and makes them into boards, still the owner may retake them, but that if a house be made with the timber it is otherwise." "In the present case," Judge Wilde continues, "it cannot be questioned that the newly erected dwelling house was a part of the freehold and was the property of Davenport," (who had erected the house on his own land from materials belonging to the plaintiff and then sold the house and land to the defendant.) "The materials used in its construction ceased to be personal property, and the owner's property in them was divested as effectually as though they had been destroyed."

If these cases in New York and Massachusetts were correctly decided, and we think they were, they must govern the case before us. The act of Luther in incorporating these materials into the defendants' mill, in the language of Judge Wilde, as effectually divested the plaintiffs' property in them as though they had been destroyed. The plaintiffs can no longer follow them. They are no longer theirs. The same principle is also recognized in the case of *Cross* v. *Marston*, 17 Vermont R., 533, though the case was decided upon other grounds. Judge Bennett there says, "It is a principle of law that the owner may pursue his property wherever he can trace it, but when the property has lost its identity it ceases to have its legal existence; as if one man should convert a quantity of bricks and erect them into a house and then deed the house to a third person, these bricks will have lost their identity; they are so changed in their character that they cease to be chattels, and the owner cannot pursue them against such third person."

If the articles had not been made part of the mill and could have been separated and had remained in such a condition that they could be identified, an interesting question would have arisen which was thoroughly and ably argued at the bar, whether the defendants, having in good faith and relying upon the apparent ownership of Luther paid him the

contract price for his labor and materials, should be compelled to restore the articles or pay for their value. If the articles had been in the condition supposed, we think a demand should have been made and an opportunity of restoration given before a suit could be brought. We are aware that in Massachusetts and Vermont it would seem that in, similar cases an action will lie without demand, but our own court in *Parker* v. *Middlebrook*, 24 Conn. R., 207, have settled the law of Connecticut, that a demand is necessary ; and in the state of New York the law is the same as with us. But if demand had been made and refused, would the action lie ? The cases of *Kingsford* v. *Merry*, 1 Hurlst. & Nor., 503, and *Higgons* v. *Burton*, 21 Jurist, Supplement, 188, seem to settle the English law in favor of the plaintiffs' continued title to the property under the circumstances supposed. The equities are regarded as equally balanced and the general principle that the owner shall not lose his title without his consent fairly and honestly obtained seems to control the cases. But we have no occasion to express a decided opinion on the question, and only advert to it because it had been so fully considered in the arguments of counsel.

Another question is suggested by the case, whether if the defendants had not paid Luther before his fraud was discovered, they might not in some form be compelled to make compensation to the plaintiffs for the benefit which the defendants would receive from the property. The civil law seems to compel compensation in similar cases, but we are not aware of any decision on the subject at common law and express no opinion in regard to it.

A new trial is not advised.

In this opinion the other judges concurred.