[See United States ex rel. Able v. One Hundred Barrels of Spirits, Case No. 15,948.]

---

## ABLE, (PAYNE v.)

[See Payne v. Able, Case No. 10,854.]

---

## ABLE, (UNITED STATES v.)

[See United States v. Able, Case No. 14,417.]

---

## ABNER TAYLOR, The.

[See The Gratitude. Case No. 5,704.]

## Case No. 19.

### ABORN et al. v. MASON.

[14 Blatchf. 405.][1]

Circuit Court, S. D. New York. Feb. 23, 1878.

BAILMENT—RIGHTS OF THE BAILOR — CONVERSION BY BAILEE—TENDER—MEASURE OF DAMAGES.

A. delivered wool and yarn to O., to be made into cloth, at a specified cost, to be paid by A. The wool and yarn and the goods were to be continuously the property of A. O. began the manufacture of goods from the materials. Thereafter, the property came into the possession of M., as the assignee in bankruptcy of O. At that time, it was in the condition of dyed wool, mixed with shoddy, and woolen yarns in the various stages of manufacture into cloth, and was of small market value, and not salable. A. demanded from M. the specific wool and yarn delivered to O., and the yarns in process of manufacture, and offered to pay all charges on them, if informed of the amount. M. completed the manufacture of the goods, and expended $800 in finishing them, and sold them for $3,193 50. A. sued M. in trover, for the conversion of the wool and yarns and goods: Held, that it was not necessary for A. to prove an actual tender of an amount sufficient to cover the value of the work and materials supplied by O., but that the offer made to pay the charges was sufficient. Held, also, that A. was entitled to recover the avails of the goods, less the cost of the materials furnished by O. and by M., and the expense of manufacture.

[At law. Action of trover and conversion by Robert W. Aborn and others against John W. Mason, assignee in bankruptcy of Louis H. Oberhofer. Heard on motion for new trial. Motion denied.]

Michael W. Divine and Aaron P. Whitehead, for plaintiffs.

John E. Parsons, for defendant.

SHIPMAN, District Judge. On or about May 6th, 1871, the plaintiffs were the owners of a quantity of superfine wool and of inferior wool and of double and twist yarn upon spools, of the value of $1,737 69, and delivered the same to Louis H. Oberhofer, a woolen manufacturer of Canterbury, Connecticut, to be manufactured by him into cassimeres, at an estimated cost of twenty-one cents per yard, to be paid by the plaintiffs. The wool and the yarn, and the goods which were to be manufactured therefrom, were to be continuously the property of the plaintiffs. It was supposed that this wool would make about 5,000 yards of cloth. Oberhofer received the materials in his factory, and commenced the manufacture of goods therefrom. About May 25th, 1871, all the property in the possession of Oberhofer was attached and remained under attachment, or in the possession of the United States marshal, by virtue of a warrant in bankruptcy, until about August 31st, 1871, when the property came into the possession of the defendant, who had been theretofore duly appointed assignee in bankruptcy of Oberhofer's estate. On this

[1][Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

date, there was upon the premises neither wool in bags nor cotton yarn upon spools, but the goods which had been sent by the plaintiffs were upon the machinery of the factory, in the form of dyed wool mixed with shoddy, or of woolen yarns in the various stages of manufacture into cloth. The market value of this woolen yarn and wool in process of manufacture was small, as the materials were in such a condition that they were not salable. The assignee estimated, that the unfinished goods were not worth over $100, and would scarcely bring that sum, if he should attempt to sell them in their unfinished state. Another witness estimated the value at from $300 to $500. A few days after September 14th, 1871, the assignee obtained authority from the district court to complete the manufacture of these goods by the purchase of the necessary additional material, and the employment of the necessary labor. On September 15th, 1871, the plaintiffs made a written demand upon the defendant for the delivery to them of the specific bales of wool and spools of cotton yarn which they had delivered to Oberhofer. and offered to pay all charges, expenses and liens which the bankrupt, or the defendant, as assignee, had upon said merchandise, and, as they were ignorant of the amount of such charges and liens, asked to be informed of the amount, that they might tender and pay it. There was also some testimony to the effect that, at the same time, one of the plaintiffs verbally informed the defendant of the fact that the wool and yarn were in process of manufacture, and notified him that they were seeking not only the wool existing in specie, but wool and yarns in process of manufacture. Testimony was also given by the defendant, to show that the plaintiffs were insisting, until the commencement of the suit, that their wool was in the factory in its original form, and was easily distinguishable. The defendant did not comply with the demand, but completed the manufacture of the unfinished goods, at an expense of $800. The goods were finished about the middle of October, 1871. All the goods which were thus manufactured, and the goods which Oberhofer had finished from other wool, were sold for the defendant, who received the sum of $3,193 50, therefor.

The plaintiffs brought an action of trover, on December 9th, 1871, against the defendant, for the conversion of the wool and cotton yarns which they had delivered to Oberhofer. The declaration was subsequently amended, so as to allege the conversion of "certain yarns, and goods made from said wools and said double and twist yarn, one or both." Upon the trial of the case to the jury, they were instructed, that, the property having come rightfully into the possession of the assignee, the demand upon him should have been in such terms as to apprise him of what he was claimed to be wrongfully detaining from the plaintiffs, and he should

have been informed in such manner as to enable him to understand the kind of property which was demanded; and that, if the written demand was the only demand which was made, or notice which was given to the assignee, the plaintiffs could not recover. The jury were also instructed, that if, in addition to the written demand, the assignee was informed by the plaintiffs, that they were seeking to obtain from him, and that they demanded of him, the woolen yarns and wool, in the various stages of manufacture, which Oberhofer had been manufacturing for them under his contract, then, if the assignee, after such notice and demand, completed the manufacture, and sold the manufactured goods, he would be liable, provided such goods were made from their yarn.

Two questions of fact were submitted to the jury: 1st. Was such a demand made by the plaintiffs? 2d. Were the goods which were in process of manufacture in the mill of Oberhofer, at the time of the appointment of the assignee, the property of the plaintiffs? If both these questions of fact were found for the plaintiffs, the jury were instructed, upon the question of damages, that the circumstances of the case were peculiar, and that, in the ascertainment of damages, they should deduct from the avails of the manufactured goods the entire cost of the materials furnished by the assignee or by Oberhofer, and the expense and cost of manufacture. The jury returned a verdict for the plaintiffs, for $2,367 49.

Upon a motion for a new trial, the defendants insist, (1.) that the demand of the plaintiffs was limited to wool and cotton yarn; and that, upon such a demand, the defendant, having come rightfully into the possession of the property, cannot be found to be a wrong-doer, for a conversion of property which did not correspond with the demand, and which he did not know was claimed by the plaintiffs. The jury were instructed in accordance with the principle of law which is claimed by the defendant. but they found, as matter of fact, that the plaintiffs verbally demanded of the defendant woolen yarns which were in process of manufacture. The jury evidently believed that the defendant was apprised by the plaintiffs of the exact property which they claimed he was wrongfully detaining from them.

(2.) It is claimed, that, for the value of the work and materials which were supplied by Oberhofer, the defendant, as his assignee, had a lien, at the time of the demand, upon the property of the plaintiffs; that it was incumbent upon them to make an actual tender of an amount sufficient to cover this lien; and that an offer to pay, or a readiness to pay, did not comply with the necessity of an actual tender of money. Oberhofer had agreed with the plaintiffs to manufacture their wool into cassimeres.

They had agreed to pay him a stipulated price for the labor and the materials which he should furnish. His duty was to deliver the manufactured goods, and their duty was to pay the price of manufacture. These obligations were mutual and concurrent. The payment of the cost of manufacture, and the delivery of the goods, were concomitant acts. In the case of mutual and concurrent promises, "the word 'tender,' as used in such a connection, does not mean the same kind of offer as when it is used with reference to the payment or offer to pay an ordinary debt due in money, where the money is offered to a creditor who is entitled to receive it, and nothing further remains to be done, but the transaction is completed and ended; but it only means a readiness and willingness, accompanied with an ability on the part of one of the parties, to do the acts which the agreement requires him to perform, provided the other will concurrently do the things which he is required by it to do, and a notice by the former to the latter of such readiness. Such readiness, ability and notice are sufficient evidence of, and indeed constitute and imply, an offer or tender, in the sense in which those terms are used in reference to the kind of agreements which we are now considering." Smith v. Lewis, 26 Conn. 110; Adams v. Clark, 9 Cush. 215; Tate v. Meek, 8 Taunt. 280.

The defendant next insists, that the liability of the defendant was limited to the value of the property in its condition at the time of the conversion, and that the uncontradicted testimony showed that such value did not exceed $500. The general rule of the common law, in regard to title by accession, is, that whatever alteration of form has taken place in personal property, the owner is entitled to such property in its state of improvement, unless the identity of the original materials has been destroyed, or unless the thing has been annexed to and made part of some other thing which is the principal, or its nature has been changed from personal to real property; "but, if the thing itself, by such operation, was changed into a different species, as by making wine, oil, or bread out of another's grapes, olives or wheat, it belonged to the new operator, who was only to make satisfaction to the former proprietor for the materials which he had so converted." 2 Bl. Comm. 404; 2 Kent, Comm. 364; Silsbury v. McCoon, 6 Hill, 425; Woodruff & Beach Iron Works v. Adams, 37 Conn. 233.

In this case, the property, at the time of the conversion, consisted of woolen yarn and wool in the various stages of manufacture into cloth. The property was, in fact, unfinished woolen cassimeres, and was described to be such by the assignee, in his testimony before the district court, upon his application for leave to complete the manufacture. By the labor and materials which were furnished, unfinished goods became finished. The species of the property was not changed, and the identity of the materials, as they existed at the time of the conversion, was not lost.

It has frequently been held, that the person whose property has been tortiously taken, is entitled to the enhanced value, until it has been so changed as to alter the title, or to destroy the identity of the property. Betts v. Lee, 5 Johns. 348; Curtis v. Groat, 6 Johns. 168; Brown v. Sax, 7 Cow. 95; Baker v. Wheeler, 8 Wend. 505. But courts have not been satisfied with a rigid rule, which would invariably permit a plaintiff to recover the enhanced value, without any deduction for the labor and expenses which, in the absence of fraud, have been bestowed upon such property by the defendant, and have not enforced the rule to its full extent. Wood v. Morewood, 3 Adol. & E. (N. S.) 440; Hilton v. Woods, L. R., 4 Eq. 433; Benjamin v. Benjamin, 15 Conn. 347; Silsbury v. McCoon, 4 Denio, 332. Instances can easily be imagined where a rigid enforcement of the rule would work hardship; and, in this case, the plaintiffs did not ask the court to charge that they were entitled to the enhanced value of the manufactured goods, without reference to the expenses of manufacture.

The rule which was given to the jury was adopted in the case of Morgan v. Powell, 3 Adol. & E. (N. S.) 278, an action of trespass for digging coals in the plaintiff's mine. The court determined that the value of the plaintiff's coals was the sale price at the pit's mouth, after deducting the expenses of carrying the coals from the place in the mine where they were dug, to the mouth. Under the circumstances of this case, the allowance for the defendant's labor and expenses was eminently just. Wool had been delivered to be manufactured into cloth. It was in a partial state of manufacture when the assignee took possession, labor, skill and materials having been expended upon it, by the bankrupt. At this time the materials were in such a condition that they had very little salable value; and, in order to make the property a merchantable article of value, more materials must be purchased, labor must be employed, and time must be expended. The deduction is fully justified by the decisions which have been cited. The motion for a new trial is denied.