CYRUS B. MANCHESTER *et ux. vs.* THE POINT STREET IRON WORKS.

In an action between A. and B. to determine the title to certain land made by filling in from a former shore line to a harbor line, the upland boundary between A. and B. being a line which would, if prolonged, meet the harbor line obliquely;

It appearing: that no agreement existed between the predecessors in title of A. and B. as to the prolongation of the upland boundary, and no such recognition of the prolongation as could effect an estoppel; that whatever recognition there had been was before the establishment of the harbor line, and when such prolongation coincided with the proper line of filling; that the conveyances under which A. and B. held were not made by reference to a plat showing other lots outside the boundaries described in the conveyances with access by land to such lots; and that these conveyances showed no intention to reserve any part of the water front outside the boundaries given to them:

*Held*, that the dividing line between A. and B. was to be drawn from the termination on the old shore of their upland boundary, perpendicular to the harbor line.

*Bailey* v. *Burges*, 11 R. I. 380, and *Aborn* v. *Smith*, 12 R. I. 370, affirmed.

*Brown* v. *Goddard, ante*, p. 76, distinguished.

DEFENDANT'S petition for a new trial.

*July* 12, 1881. DURFEE, C. J. This is trespass and ejectment for the recovery of certain land on the west side of Providence River, formerly tide-flowed and lying within a harbor line.[1] The plaintiff claims the land by virtue of his riparian right, as an up-

---

[1] This harbor line is the same as that considered in *Aborn* v. *Smith*, 12 R. I. 370. The estates whose boundaries were litigated in the present case lie much above those involved in the discussion of *Aborn* v. *Smith*. See 12 R. I. 371.

land owner, under the rule for the apportionment of water fronts laid down in *Aborn* v. *Smith*, 12 R. I. 370, namely, that the dividing line is to be drawn from the point where the dividing line of the upland meets the shore, perpendicularly to the harbor line. The defendant corporation, which or the ancestor in title of which filled in the land and has occupied it for many years, contends that that rule ought not to be applied, but that, in the circumstances, the true line is an old line known as " the Field and Manchester line," which is or was the dividing line between Field and Manchester, early riparian proprietors, extended over tide-water to the harbor line, and which as so extended runs diagonally across what the plaintiffs claim for their water front under the rule laid down in *Aborn* v. *Smith*. On the trial the court instructed the jury to follow said rule unless the defendant had acquired title by adverse possession. The jury gave their verdict for the plaintiffs. The defendant petitions for a new trial for error, assigning as grounds of the petition several exceptions to rulings and refusals to rule by the court, though he now presses only a part of them on our attention.

The defendant contended on the jury trial that the predecessors in title of the plaintiffs had recognized the Field and Manchester line as their northerly boundary in tide-water, and requested the court to instruct the jury that if they found that for fifty years or upwards prior to its being questioned by Henry C. Matthewson, the immediate predecessor of the plaintiffs, the Field and Manchester line had been recognized and acquiesced in by the owners on either side of it as the line of filling, the plaintiffs could not recover. The court refused the instruction on the ground that there was no evidence to warrant it. We think the court rightly refused it.

There is no evidence that the line was ever established, or recognized as existing, over tide-water, in any conveyance or agreement to which the riparian owners on both sides of it were parties. But, on the other hand, several conveyances, executed by the predecessors in title of the plaintiffs, one of them as recently as 1828, were put in evidence by the plaintiffs, in which the existence of the line was utterly ignored, the descriptions being such that, taken as intended by the grantors, they would carry the grantees

directly across the line.   Among these was a conveyance by Isaac and Mary Manchester to Benjamin E. Jones, dated January 14, 1812, being the conveyance through which the plaintiffs derive their title to their land lying nearest the defendant's.   By deed dated May 3, 1828, however, Benjamin E. Jones conveyed to Benjamin A. Battey, and by deed dated April 2, 1840, Horace Battey, who had succeeded to the title of Benjamin A., conveyed to Henry C. Matthewson, the immediate predecessor in title of the plaintiffs.   Both these latter deeds purport to convey by definite boundaries, one of the northerly or northwesterly boundaries within tide-water being the Field and Manchester line.   Here there was plainly then a recognition of the line, a recognition beginning in 1828 and continuing until 1840, a period of twelve years.   The defendant has not called our attention to any other recognition of the line by any person whose recognition could affect the title of the plaintiffs.   But, by the plaintiffs, evidence was submitted to show that as early as 1855–6 the line was in dispute between Henry C. Matthewson and the defendant's predecessor in title, and that in 1864 it was distinctly repudiated by Henry C. Matthewson, who notified the defendant's predecessor, then in the act of filling, that he should lay claim to every foot of land made by filling within the lines of his lots in the direction of the channel.   This testimony, which was uncontradicted, shows that the recognition, instead of exceeding, fell far short of fifty years.   A recognition so fluctuating and temporary cannot, in our opinion, without something else to create an estoppel, be held to have established the Field and Manchester line, if, indeed, any mere recognition of the kind can be available at law.   The case of *Stockham* v. *Browning*, 18 N. J. Eq. 390, which is relied on by the defendant to support its claim, was vastly stronger; for there the line, which diverged but little from the legal line, had been recognized in conveyances by the owners on both sides for forty years, without question or adverse claim, no question or adverse claim having, in fact, ever been raised previous to the act which caused the suit.   The recognition here more closely resembles the recognition by judgment and plat in partition in *Aborn* v. *Smith*, which the defendant in that case claimed advantage of as an estoppel, but which the court refused to enforce as such.   The recognition

in both cases probably resulted from a mistaken notion in regard to the rule of apportionment. Moreover, in the case at bar, it is conceded that the conveyances of 1828 and 1840 preceded the establishment of the present harbor line, and that when they were made the Field and Manchester line was coincident with the proper line of filling. We, therefore, think that the exceptions to the refusals to charge as aforesaid must be disallowed.

The defendant also contended that the plaintiffs, in so far as they derived their right from the deeds of 1828 and 1840, were confined in their potential right to fill by the boundaries given in those deeds, and that they could have no right by virtue of any riparian ownership to fill beyond those boundaries, and requested the court so to instruct the jury, which the court refused to do. We think it rightly refused.

If the conveyances of 1828 and 1840 had been made by reference to a plat showing other lots with access to them by land platted by the grantors or their predecessor outside the boundaries given in said conveyances, the case would have fallen under *Brown* v. *Goddard, ante,* p. 76, and the position taken by the defendant would have been tenable. But there were no lots so platted, and the conveyances do not show any intent on the part of the grantors or either of them to reserve, either for themselves or for any person claiming under them, any portion of the water front exterior to the boundaries, but rather the contrary; and there was therefore no implied contract or condition annexed to the grants to confine the grantors within the boundaries. In this respect the case falls within *Bailey* v. *Burges,* 11 R. I. 330, where the court held, following the precedent of the unreported case of *Manchester* v. *Hudson,* that the fact that the granted lots, extending below high-water mark, were defined by strict boundary lines, there being no lots platted exterior to them, did not limit the potential right to fill out beyond the lines, inasmuch as the right accrued to the grantee in such a case as incident to his riparian ownership, the existence of the platted lines being insufficient clearly to show a contrary intent. The exceptions to the refusals to charge according to the fifth and sixth requests, the refusal to charge according to the sixth request being immaterial in this view of the law, are therefore disallowed.

The exception to the refusal to charge according to the seventh request is also disallowed, the court being of the opinion that the case is a proper one for the application of the rule of apportionment laid down in *Aborn* v. *Smith*, 12 R. I. 370.

Other exceptions were taken, but inasmuch as we do not understand that they are insisted on, they have not been considered by the court. *Petition dismissed.*

*George H. Browne, Warren R. Perce & Charles A. Wilson,* for plaintiffs.

