MARY ANN RADICAN *vs.* JULIA RADICAN.

PROVIDENCE—FEBRUARY 9, 1901.

PRESENT : Tillinghast, Douglas, and Blodgett, JJ.

(1)  *Statute of Limitations.   Part Payment.   Husband and Wife.   Separate Estate of Married Woman.*

Where a mortgage note signed by husband and wife was invalid as against the wife at the time it was signed, by reason of her coverture, a payment thereon made by the wife after the decease of her husband does not validate a mortgage upon her separate real estate given to secure the payment of such note.

As the husband had deceased prior to the payment, the wife could not be regarded as his agent, nor was there any moral obligation resting upon the wife to repay a loan made to the husband for his own purposes ; hence the payment was made under circumstances repelling the inference of a new promise.

(2)  *Husband and Wife.   Principal and Surety.*

Regarding the mortgage by the wife as surety for the debt of the husband, unless the mortgage debt was enforceable against the latter the surety was not bound.

(3)  *Title by Possession.*

Under the provisions of the statute of possessions of this State, whenever the conditions under which it takes effect have been completely fulfilled, the title or estate itself is transferred *proprio vigore* to the possessor of the land in question.

In 1877 A., a married woman, the owner of certain premises, executed a mortgage deed, in conjunction with her husband B., to C. to secure the payment of a demand note signed by A. and B.   At the time of the execution of the note and mortgage a married woman was without power to make a valid promissory note.   B. died ; in 1892 A. paid $29 on account of the note ; there was no other recognition by either A. or C. of the mortgage as a lien until 1900 :—

*Held*, that A. was entitled to a perpetual injunction against C.

BILL IN EQUITY seeking a perpetual injunction against the foreclosure of a mortgage, and to quiet title.   The facts are fully stated in the opinion.   Relief granted.

BLODGETT, J.   On December 28, 1877, the complainant, Mary Ann Radican, being then the owner in fee of the prem-

ises described in the mortgage deed set forth in this bill, exe-
cuted the mortgage deed in question, in conjunction with her
then husband, James, to the respondent Julia Radican to
secure the payment of a demand note of the following tenor,
viz.:

"CUMBERLAND, R. I., December 28, 1877.
"$100.00.

"For value received, I promise to pay Julia Radican, or
order, one hundred dollars on demand after date, with inter-
est at seven per cent. per annum.

his

"JAMES × RADICAN.

mark.

"MARY ANN RADICAN.

"Payment being secured by mortgage upon
real estate bearing even date herewith."

(1)     The complainant has been for more than thirty-seven years
in possession of the mortgaged premises, and she avers that
within the last twenty-two years no interest has been paid on
the mortgage note; neither has there been any payment on
the principal nor any demand for either, nor any recognition
by the complainant or claim by the respondent that the mort-
gage was a lien upon the property, until June, 1900, when
the respondent sought to foreclose the mortgage and adver-
tised the property for sale under the power of sale therein
contained.    The respondent alleges a payment of $29 by the
complainant, in the year 1892, upon the principal of this note.

A temporary injunction has been granted restraining the
foreclosure until further order of the court, and the case is
now before the court upon the single issue framed :

"Has there been any payment made for principal or inter-
est within twenty years on the mortgage referred to in com-
plainant's bill?"

There is no dispute that the sum of $29 was paid in 1892
by the complainant to the respondent, but the complainant
claims that such payment was made in settlement of other
matters and not on account of this transaction.    On this point

the testimony is conflicting, and it is at best doubtful if the payment was made on account of this note and with the intent to recognize and assume the mortgage debt as a valid obligation.

In *Cheever* v. *Perley*, 11 Allen, 584, the court says, "Some positive act of unequivocal recognition, like part payment or a written admission, or at least a clear and well-identified verbal promise or admission, intelligently made within the period of twenty years, is required. Parol evidence, testimony of loose conversations had many years before, is to be cautiously received when offered to defeat a presumption so beneficial in quieting titles to real estate."

But, assuming the payment to have been made by the complainant on the note in question, we are then brought to a consideration of the question whether a payment so made is effectual to validate the note and the mortgage in question.

It is conceded that James, the husband of the complainant, had deceased prior to the making of this payment, and that on December 28, 1877, when the note was given and this mortgage deed was executed, a married woman could not make a valid promissory note in this State, for the married women's act, so-called, was not passed until 1893. *Hayden* v. *Stone*, 13 R. I. 106 ; *Benjamin* v. *Benjamin*, 15 Conn. 354 ; *Butler* v. *Price*, 115 Mass. 578.

So that the real question presented for determination is this : Does a payment made by a wife, after the decease of her husband, upon a mortgage note which was invalid as against her when it was signed by her—by reason of her coverture—validate a mortgage upon her separate real estate given to secure the payment of such note? We are clearly of the opinion that it does not have that effect. The husband was dead at the time of this payment, and therefore she could not have acted as his agent, and there was no administration taken out upon his estate. In *Read* v. *Johnson*, 1 R. I. p. 82, this court decided that "Payment in part is not of itself a new promise, but a fact from which, in general, a new promise is *prima facie* inferred. But such payment may be made under circumstances that shall repel the inference ; as, when made

by a stranger, *or by one not acting under the control of the debtor*, or by the debtor himself, declaring at the time it is in full of demand, or by the payee himself, into whose hands money has come which he is authorized to apply." "There is a moral obligation," says the court in *McLaren* v. *McMartin*, 36 N. Y. 88, "on the debtor to pay demands which he knows have never been satisfied ; but there is none on his executor or administrator to pay claims which the statute has barred." Hence the decision in that case that part payment by an administrator does not revive the debt.    So in *Didlake* v. *Robb*, 1 Woods, 680, the court, after recognizing the moral obligation of the original debtor, held a promise by his heir void for a want of consideration.    In the case at bar it is not claimed that the money borrowed by the husband was expended for improvements on his wife's estate, and consequently there is no moral obligation on the wife to repay a loan made to her hus-

(2) band for his own purposes.    It is true that a wife may mortgage her real estate for her husband's debts, but in so doing such mortgage is merely a surety for the debt, and unless the mortgage debt be enforceable as against the principal debtor, the surety is not bound.    In *Ballou* v. *Taylor*, 14 R. I. p. 279, this court decided "That the remedy on the mortgage ordinarily remains good until the note is paid, or may have been presumed to have been paid, or until the remedy has been lost by the lapse of twenty years without recognition of the mortgage as a valid lien by the mortgagor remaining in possession."

(3) And see also *Staples* v. *Staples*, 20 R. I. 264.    The law on this point is well stated by Chancellor Kent in *Giles* v. *Baremore*, 5 Johns. Ch. at p. 549, as follows : "These presumptions do not always proceed, as has been repeatedly observed (Lord Mansfield in *Eldridge* v. *Knott*, Cowp. 214, and Sir William Grant, the master of the rolls, in *Hillary* v. *Waller*, 12 Vesey, Jr. 252), on the belief that the thing presumed has actually taken place.    A grant, which is, of course, a matter of record, may be presumed against the crown ; not that the court really thinks, as Lord Mansfield has observed, that a grant has been made, because it is not probable a grant should have existed without its being upon record, but they presume the

fact for the purpose, and from a principle, of quieting the possession.

" The defendant says he is ignorant whether or no the debt has been paid; and in *Hillary* v. *Waller (ubi supra)* the master of the rolls says : ' It is because there are no means of creating belief or disbelief that such general presumptions are raised.' Instead of belief, which is the foundation of the judgment upon a recent transaction, the legal presumption in matters of antiquity holds, as he observed, the place of particular and individual belief.

" These presumptions, to be drawn by the courts in the case of stale demands, are founded in substantial justice and the clearest policy. If the party, having knowledge of his rights, will sit still, and, without asserting them, permit persons to act as if they did not exist, and to acquire interests, and consider themselves as owners of the property, there is no reason why the presumption should not be raised. It is, therefore, well settled that the presumption that a demand has been satisfied prevails as much in this court as it does at law. Claims, the most solemnly established upon the face of them, will be presumed to be satisfied after a certain length of time. Matters of record, deeds, and even a private statute, may be presumed to make good a title. A court of equity makes the presumption on the facts before it, without sending the case to law, provided a jury upon the same facts, ought, and would, so presume. The presumption resolves itself into this, that a man will naturally enjoy what belongs to him. These are principles of decision adopted and sanctioned in a variety of cases, and by a succession of learned judges in the *English* Court of Chancery ; and their solidity is not to be questioned, and they apply with the utmost propriety and force to the present case."

Section 2 of chapter 205 of the General Laws provides as follows :

" Where any person or persons, or others from whom he or they derive their title, either by themselves, tenants, or lessees shall have been for the space of twenty years, or for the space of ten years beginning at any time hereafter, in the

uninterrupted, quiet, peaceable and actual seisin and possession of any lands, tenements, or hereditaments for and during the said time, claiming the same as his, her, or their proper, sole, and rightful estate in fee simple, such actual seisin and possession shall be allowed to give and make a good and rightful title to such person or persons, their heirs and assigns forever; and any plaintiff suing for the recovery of any such lands may rely upon such possession as conclusive title thereto, and this chapter being pleaded in bar to any action that shall be brought for such lands, tenements, or hereditaments, and such actual seisin and possession being duly proved, shall be allowed to be good, valid, and effectual in law for barring such action."

Concerning the statute above cited, this court has held in *Union Savings Bank* v. *Taber*, 13 R. I. at p. 692: "The statute of this State is peculiar. It differs essentially from the statute of 21 James I, cap. 16, and the statutes of other States, which operate merely as a limitation on the right of entry or action, in that it transfers the title or estate itself, *proprio vigore*, whenever the conditions under which it takes effect have been completely fulfilled."

We are accordingly of the opinion that the complainant is entitled to a perpetual injunction against the respondent, and to the other relief prayed for in the bill.

Decree accordingly.

*James J. Nolan, Jr.*, for complainant.

*Hugh J. Carroll*, for respondent.