FORREST G. EDDY vs. JAMES CAMPBELL, Admr.

PROVIDENCE—JULY 15, 1901.

PRESENT : Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Mortgages. Evidence.*

Where, in an action to foreclose a mortgage given and recorded twenty-five years ago, the transfer to complainant's intestate was not recorded and the transfer, mortgage, and notes secured by it are said to be lost, the complainant must establish his claim by clear proof or relief will be denied.

(2) *Mortgages. Foreclosure, Lost Documents. Evidence.*

In an action to foreclose a mortgage given twenty-five years ago, which complainant claimed was lost, the defendant, grantee of the mortgagor, was allowed to testify that when he purchased the land the mortgagor said the mortgage was given to his physician and friend to keep creditors off ; that they went to the friend's office, who took them to the store of complainant's intestate, where the latter went to his safe and took out the mortgage and gave it to the mortgagor, who handed it to the defendant who kept it until it was burned at his mill :—

*Held,* that while neither the mortgagor nor defendant as his grantee would be allowed to set up fraud in the deed to avoid it in the hands of complainant, the evidence was admissible to explain the loss and destruction of the mortgage and why it was not in the possession of the plaintiff.

(3) *Mortgages. Stale Claim.*

Where a mortgage was twenty-four years old when a bill to foreclose it was filed, and no payment of either principal or interest had ever been made or demanded, and, while a portion of the property was claimed and possessed adversely to the mortgagor and his grantee for a time, the grantee had had actual possession for more than twenty years, the claim is stale, and a bill to foreclose will be dismissed.

BILL IN EQUITY to foreclose a mortgage. The facts are stated in full. Heard, and bill dismissed.

(1)    STINESS, C. J.    The complainant seeks to foreclose a mortgage given by Henry C. Mathewson to Thomas G. Potter, dated February 7, 1876, which, it is claimed, was transferred by said Potter to the complainant's intestate, Thomas W. Eddy, as collateral security for debts due from Potter to him. The mortgage was recorded, but the transfer was not

recorded, and it is said to be lost. The mortgage and notes secured by it are also said to be lost; so that the complainant's bill seeks to foreclose a mortgage, given twenty-five years ago, which is lost, to secure a debt evidenced by lost notes under a lost assignment of the mortgage.

The mere statement of such a claim is enough to require clear proof of the right which a complainant asks a court to enforce. The evidence of such right in this case is certainly not clear. There is no question that the mortgage was executed and recorded, and that it purported to secure the payment of two notes, one of $12,000 and one of $500. We think it appears that this mortgage came into the possession of Thomas W. Eddy from Potter, the mortgagee. The complainant testifies that he saw it in 1876, and that when his father died, in 1878, he thinks it was with his papers. It also appears that Potter was indebted to Thomas W. Eddy, because the latter recovered judgment against Potter for the sum of $6,100 at the December term of the Court of Common Pleas, 1876. Upon the death of Thomas W. Eddy the complainant became administrator of his estate. Neither the mortgage nor the notes were included in the inventory of his father's estate by the complainant.

(2) While some of these facts tend to support the bill, they do not explain the loss of the mortgage, the notes, and the transfer, nor do they explain why the administrator took no steps to enforce his rights under the mortgage. Upon the latter point his claim is that the title to the land was in litigation; but this was ended in 1881 in favor of the respondent, who had succeeded to Mathewson's title. The respondent's testimony shows that prior to November 8, 1878, Mathewson asked the respondent to go with him to Potter, stating that Potter had this mortgage which he, Mathewson, gave to Potter, his physician and friend, without consideration, to keep creditors off. Mathewson, Campbell, and Dr. Buchanan went to Potter, whose office was over Eddy's drug store. Mathewson and Potter came out of the latter's office and went into the drug store, where Eddy went to his safe and took out the mortgage, gave it to Potter, and when they came out Mathewson handed

the mortgage to Campbell, who took it and kept it until it was burned in a fire at his mill. Campbell, in the meantime, had bought Mathewson's interest in the land under a sale upon his attachment. Campbell says that he did not open the mortgage and so cannot say whether the notes were with it, but he saw that it was a mortgage, and that Potter's and Mathewson's names were on it. Buchanan testifies to the same occurrence, and Campbell's son testifies that the mortgage was handed to him on his father's return and that he put it into the safe. The complainant objected to the admission of Mathewson's and Potter's statements that the mortgage was without consideration and a cover, because the respondent claims title from Mathewson, and so he is estopped from denying the mortgage upon the ground of Mathewson's fraud. If the respondent's object was to impeach the mortgage, the testimony would be inadmissible, for the plain reason that one cannot set up fraud by himself, or those through whom he claims title, to avoid a deed relied on by another. The testimony, however, is admissible in this case for another purpose. Our inquiry is whether Thomas W. Eddy was the equitable holder of the mortgage. He had possession of it, but it is said that he gave it up. If it was a valuable security to the amount of over $12,000, the voluntary surrender of it without payment would be almost incredible; but if it was known to be without consideration, executed for a purpose, even an unlawful one, which no longer existed, the surrender upon request would be natural. The fact, therefore, throws light upon the absence of the mortgage and notes by tending to show a surrender. So far as appears, there was no other mortgage between. Mathewson and Potter. The complainant does not claim to have seen it since the fall of 1876. He thinks it was given to his father's counsel in the suit against Potter, but the counsel denies it; and there seems to be no reason why he should have had it for the purposes of that suit, as it was held only for collateral security according to the bill. There is testimony to the effect that Thomas W. Eddy was confined to his house by sickness in 1878, and so could not have delivered the mortgage as the respondent testifies. We do not

undertake to reconcile the testimony. We can only say that the evidence of the witnesses to the fact of the delivery; of its absence from the complainant's possession after that time; and of his omission for more than twenty years afterwards to make any claim thereunder, either for principal or interest, shows a preponderance of evidence that the mortgage was surrendered, although not cancelled, and was not regarded as a subsisting obligation. Of course it stood upon the record as a mortgage running to Potter, and in 1881, after the decision in favor of Campbell's title, the complainant procured from Potter a transfer of the mortgage, reciting the fact of a former transfer and its loss. We fail to see how this can have any validity after Potter himself had surrendered the mortgage and had no possession of either mortgage or notes. If he had previously transferred the mortgage, he had then no title to convey.

(3)     But this transfer was not recorded until two years later, and this bill was not brought until seventeen years after such transfer.

Not only does the plaintiff's case rest upon this shadowy and uncertain foundation, but there are other facts which are sufficient to bar his recovery.

At the filing of this bill the mortgage was twenty-four years old. No payment of principal or interest had ever been made or demanded, so far as the evidence shows. The complainant's reply to this is that in 1876 the land was held adversely to Mathewson, so that Campbell took no title under the sheriff's deed. See *Campbell* v. *Point St. Iron Works*, 12 R. I. 452. In that case Campbell had attached Mathewson's interest in the land in question, but his title under the sheriff's sale was held to be void because of the adverse possession of the defendant. The complainant in this case claims that, as Campbell's title was not finally settled until 1881, he can enforce his mortgage at any time within twenty years from the time of Campbell's possession. This is the general rule, as was held in *Staples* v. *Staples*, 20 R. I. 264, and *Radican* v. *Radican*, 22 R. I. 405. While, however, Campbell's title was not judicially determined until 1881, the judgment

then given in ejectment, *Manchester et al.* v. *Point St. Iron Works*, 13 R. I. 355, related back to the commencement of the action, which was April 17, 1874. Waiving this point, the effect of which we need not now consider, the evidence shows that Campbell was in fact in possession from 1878, while the second suit was pending.

The case of *Campbell v. Point St. Iron Works*, *supra*, was an action of trespass and ejectment, and it appears in the papers, though not in the opinion, that the question was one of location of the boundary line between the plaintiff and defendant.

The plaintiff claimed a line running 107 feet on Eddy street from Manchester street, and thence at right angles to the harbor line, which is the line described in this mortgage. The defendant claimed that it should be a shorter line on Eddy street, running to the harbor line by what was known as the Manchester and Field line. It appears from the charge of Judge Durfee, on file with the papers, that the Point St. Iron Works claimed to be in possession of only a part of the land to which the disputed boundary line applied. The jury found for the plaintiff, on a line running 83 feet on Eddy street; and, as this included a part of the land claimed by the Point St. Iron Works, the verdict was afterwards set aside on the ground that Campbell got no legal title to the land because of the adverse possession of the defendant at the time of the execution sale. The case shows, however, that the adverse possession did not extend to all the land covered by the mortgage, but only to a comparatively small part thereof dependent upon the boundary line; and such a dispute is not enough, in our opinion, to take a mortgage out of the rule of limitations. The verdict in that case was rendered May 3, 1878, and soon after, not later than the summer of 1878, acting under the advice of counsel, Campbell erected a fence on the line found by the jury, thereby shutting off the Point St. Iron Works from the lot in question and taking open and exclusive possession of the same. He also demanded and received rent for a part of the land, stopped the further payment of rent to the iron works or

their successors in title for other parts, the same being deposited in bank and paid to him from May 1, 1878, after the final establishment of title in 1881.  A new trial was granted in *Campbell* v. *Point St. Iron Works,* but that does not alter the fact of possession.

We are therefore of opinion that the case comes within the decisions of *Radican* v. *Radican* and *Staples* v. *Staples, supra,* nothing having been paid on the mortgage and the successor in title to the mortgage having been in possession for more than twenty years prior to the filing of this bill.

If anything more were needed to show that the complainant is not entitled to enforce this mortgage, it would be found in the doctrine of laches.  No step was taken to enforce it for nearly nineteen years after the determination of the title to the land.  Meanwhile the mortgagor, the mortgagee, the transferee, and the lawyer who drew the mortgage had died, thus depriving the parties of testimony which might have been conclusive of the case.  It is not enough to stand upon a recorded copy of a mortgage alone, and ask a court to infer everything else pertaining to liability.

The bill must be dismissed.

*Arthur P. Sumner and Nathan H. Truman,* for complainant.

*Tillinghast & Tillinghast,* for respondent.