JAMES C. DAVIS *vs.* HENRY N. GIRARD.

JANUARY 12, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is an action of trespass and ejectment brought to recover possession of certain farm property, and the buildings thereon, situated in North Kingstown in this state. The case was heard in the superior court by a justice thereof sitting without a jury, and resulted in a decision for the plaintiff for possession of all the premises claimed by him. In the bill of exceptions which the defendant has prosecuted to this court, he is now relying only on his ex-

ceptions to the decision of the trial justice, and to the latter's refusal to make certain special findings as requested by the defendant.

The property, possession of which is sought by the plaintiff, is described in his writ by metes and bounds, and specifically excepts from the whole tract so set out, without locating it, a small parcel about 40 x 50 feet, which from the evidence appears to have been known as the old Town Pound lot. The defendant pleaded only the general issue. At the trial he admitted that due notice to vacate the property had been given him by the plaintiff, and that the latter was entitled to possession of approximately seven acres of the premises set out in his writ, of which property the plaintiff was then in possession. The defendant contended, however, that the plaintiff ought not to be awarded possession of a strip of land containing about an acre on which were located two dwelling houses and other buildings, all placed thereon subsequent to the year 1904, which strip is approximately 100 x 470 feet more or less, and comprises the southerly portion of the whole tract described in the plaintiff's writ. The old Town Pound lot, above referred to, is located on the westerly end of this strip, its exact position being in dispute.

From the evidence, it appears that on March 8, 1900, the defendant received a warranty deed from the devisees of one Turner of a tract of land with buildings and improvements thereon containing about seven acres, more or less, and bounded as follows: "Southerly on the Ten Rod Road; Westerly on land of Franklin B. Northup; Northerly partly on land of Henry H. Moore, and partly on land of Horatio N. Reynolds; Easterly on the Post Road or however otherwise bounded . . . ." The defendant married in April 1902, and on June 6 of that year conveyed the above-described premises to his wife, Alice L. Girard, and in 1910 they built a new house thereon. The defendant and his wife occupied the property from the time of their marriage until she died on April 3, 1933, and thereafter the defendant continued to

live there until July 16, 1935, when he was served with a notice to quit. After the date last mentioned, he moved to one of the houses which is located on the tract now in dispute. On July 5, 1921, Alice L. Girard executed a mortgage to the Industrial Trust Company in the sum of $5000, the defendant releasing his right of curtesy. This mortgage, by its terms, did not specifically include after-acquired property. The description of the property mortgaged was the same as that set out in the deeds of March 8, 1900, to the defendant, and of June 6, 1902, to his wife, and to this description the following statement was added: "Meaning to convey the same premises conveyed to this Mortgagor by deed from Henry N. Girard, dated June 6, 1902 . . . ."

The evidence in the case shows that the Ten Rod Road, referred to in the above deeds and mortgage, is an ancient highway extending westerly from the village of Wickford in North Kingstown to the Rhode Island-Connecticut state line, and was laid out and located in 1807 as a turnpike road by a committee appointed by the general assembly upon petition to that body. Upon the coming in of the committee's report, it was resolved: "That said report be accepted, and that the said road be established according to the plat thereof accompanying said report; that the said committee be continued for the purpose of appraising the damages, sustained by the owners of the land through which said road passes, according to the resolve passed at last session, with power also of making any alterations in the location of said road, which they may think necessary or convenient. . . ." Acts and Resolves, February and May sessions, 1807.

Later in the same year the Wickford Turnpike Company was incorporated by an act of the general assembly, and, among other things, was given the right to establish, maintain and keep up the above-described road as a turnpike road, and to maintain gates thereon and to charge and collect a specified toll, and said company was required to keep such road in good repair. This act of incorporation further provided that after the turnpike company had collected as

toll a sum equal to the capital stock of the company expended on the road, together with a specified amount of interest, and certain other sums for expenses and repairs, then the road "shall revert to the public, and forever thereafter remain discharged of the toll aforesaid." Acts and Resolves, October session, 1807. No direct evidence was introduced to show when toll ceased to be charged on this road, but no claim is made that it is now other than a free public highway.

As originally laid out, the Ten Rod Road, as its name implies, was very wide. Acting by virtue of certain powers conferred upon town councils by acts of the general assembly, which acts will be referred to specifically hereinafter, the town council of North Kingstown, upon petition, appointed a committee on June 3, 1904, to "survey, bound and mark out" the portion in such town of the highway known as the Ten Rod Road from Wickford Junction to Coalition Corner, the junction of said road with the Post Road or Tower Hill Road, so-called, and the place where the premises in dispute are located, having adjudged it necessary that such portion of Ten Rod Road be relaid. The town council also made provision for damages, if any should be sustained, to owners of abutting land by reason of the above changes. On August 8, 1904, the committee reported that they had "surveyed, bounded and marked out" the part of the highway in question, that abutting owners had sustained no injury thereby and they annexed a plat to their report. Thereafter on November 14, 1904, and after due notice to interested parties, the town council ordered that said report be approved and received, and "be recorded and said highway established and laid open by removing all buildings, fences and other impediments therein . . . ."

The plat above referred to shows that at said Coalition Corner, where the property of the defendant's wife bounded southerly on the Ten Rod Road, the northerly line of that road was delineated thereon, for the entire length of the premises involved, as being approximately 100 feet south of

such northerly line of the road as originally laid out, the road as thus marked out on such plat being materially narrower than the original Ten Rod Road. The area in dispute in this case is the tract of land of about an acre in extent, (excepting therefrom the old Town Pound lot hereinbefore referred to) which lies along the southerly boundary of the premises of the defendant's wife, as set out in the deed to her, and between the original northerly line of the Ten Rod Road and such northerly line as marked out in 1904.

Evidence was presented tending to prove that the portion of the Ten Rod Road, from Coalition Corner to a point some distance to the west, was added to the state highway system by a resolution passed by the general assembly April 20, 1906. However, whether the portion so added comprised the road as originally laid out, or as above marked out by the committee under authority of the town council of North Kingstown in 1904, does not clearly appear. On December 13, 1926, it was represented to the town council of North Kingstown that a certain portion of the Ten Rod Road in that town, including the portion involved in this case, had ceased to be useful to the public as a highway and should be abandoned. The town council so found, and, after notice to interested parties, made the following order on February 14, 1927:

"It Is Ordered that a certain portion of the Ten Rod Road be and the same is hereby abandoned, it being that portion of said highway comprising all that tract of land being outside of the limits of the boundaries of said highways, as the same was surveyed, bounded and marked out by order of the Town Council and accepted by said town as relocated on the 14th day of Nov. A. D. 1904, agreeable to a plat entitled 'Plan showing new layout of Ten Rod Road from R. R. Crossing to Coalition Corner 1904, Scale 80 ft. per inch' which plat is on file in the office of the Town Clerk of said Town, and the title of the land upon which said

abandoned highway existed hereby reverts to its owner."

The town clerk was also ordered to give the necessary notices of such abandonment as required by law.

The record herein further shows that in 1935 the mortgage given by the defendant's wife in 1921 to the Industrial Trust Company was duly foreclosed under the power of sale, and that the plaintiff purchased the premises, receiving a mortgagee's deed therefor bearing date July 16, 1935. The description of the premises conveyed by this deed is the same as in the mortgage deed given by the defendant's wife, and the following statement is also added: "Being the same premises conveyed to the mortgagor by deed from Henry N. Girard, dated June 6, 1902 . . . ."

It is well settled here that a plaintiff in an ejectment case in order to recover possession of disputed premises must do so on the strength of his own title and not by reason of the weakness of the defendant's title. *Tripp* v. *Ide,* 3 R. I. 51; *Smith* v. *Haskins,* 22 R. I. 6; *Baxter* v. *Brown,* 26 R. I. 381. In the instant case, since the plaintiff claims title under the foreclosure of the above-mentioned mortgage, and takes only the property covered thereby, his title to the acre in question depends solely upon whether or not the defendant's wife in 1921 had a title thereto, and whether, if so, she conveyed it to the Industrial Trust Company by such mortgage. The plaintiff contends that the evidence shows that both of these conditions were fulfilled, and that, therefore, he now has title to the tract in issue. The defendant, on the other hand, without attempting to prove who has title to said tract, merely maintains that such title is not in the plaintiff.

As bearing on the issue of whether or not the defendant's wife had title to the strip of land involved herein in 1921 when she executed the above mortgage, there is no proof that she received any such title through the conveyance of the seven-acre tract to her by her husband in 1902, or that he ever had the fee to this acre. At this last-mentioned date,

the acre now in dispute lay within the apparently defined boundaries of the Ten Rod Road as originally laid out under authority of the general assembly years before, and the northerly boundary of said acre was identical with the northerly boundary of such road, and was marked by an old stone wall along at least part of its length.

The plaintiff first contends, however, that the proceeding in 1904 by the town council of North Kingstown, resulting in the marking out of this part of the Ten Rod Road, together with certain acts of the defendant in fencing in the strip in dispute and adding the same to his wife's property, amounted at least to a factual, if not a formal, abandonment of such strip as part of the highway, and resulted, by reason of such abandonment, in the annexation prior to 1921, of such strip to the land of the abutting owner, namely Mrs. Girard. We are of the opinion that such a claim is untenable.

By public laws 1870, chapter 842, town councils were first given authority to abandon, in their respective towns, highways heretofore laid out therein by the state. By P. L. 1903, chap. 1106, the law in this connection was amended by striking out the word "abandon" from the section giving town councils certain powers over highways, so that the statute as amended read as follows: "Town councils may mark out, relay, widen, straighten, or change the location of the whole of or any part of any highway or driftway, whether laid out by the state or otherwise . . . ." Immediately following this amended section was a section of the then general laws which provided that town councils had like control of any highway laid out by the general assembly. Chapter 1106, *supra,* also amended a later section of the then general laws so as to deal specifically with highways which had ceased to be of public use, and provided a procedure to be followed by town councils if their abandonment was desired. Thus, by the provisions of P. L. 1903, chap. 1106, in force in 1904, the matter of marking out a highway and of abandoning one

were distinct and independent proceedings covered by different sections of that chapter.

In the instant case, the record shows that in 1904 the town council of North Kingstown, by the proceedings it then took, merely provided that the portion in question of the Ten Rod Road be surveyed, bounded and marked out, and therefore clearly acted either under its general powers over highways in the town (see *Horgan* v. *Town Council, Jamestown,* 32 R. I. 528) or under the provisions of section 1 of chap, 1106, *supra.* At that time the town council of North Kingstown made no attempt to proceed under the subsequent section, which dealt with *abandonment,* and it made no orders or decrees declaring that any portion of the Ten Rod Road was abandoned.

This court has held that the general assembly has jealously guarded its control over the highways which it has laid out, and that from early times the statutes have provided legal methods for discontinuing highways which should be found to be no longer useful. *Knowles* v. *Knowles,* 25 R. I. 325. It has also been decided that a committee or commission which is merely ordered to "survey, bound and mark out" an existing highway, has no authority to run new or different lines in performing its duties, and that a town council has no power to reduce the width of a highway under such a proceeding. Facts not unlike those in the instant case appear in *Gill* v. *Town Council, Jamestown,* 47 R. I. 425, where the court at page 429 used this language: "Marking out an *existing* way, however, is not done by running lines different from but within existing lines capable of being definitely fixed." And again, at page 430: "The Council in this proceeding had no power to approve of an abutter's privately holding a portion of the public way. If it is desirable that the lines be changed or altered this can be done by proper procedure. It can not, however, be done under the guise of relocating ancient lines."

Assuming, but not deciding, that in 1904 the town council, by following the terms of the statute then in force relating to the method of abandoning highways, had power to abandon the part of the Ten Rod Road in question, we find that it did not then follow the terms of such statute, and that, therefore, it did not legally and properly abandon such part of such road at any time prior to the execution by the defendant's wife in 1921 of her mortgage to the Industrial Trust Company. It follows that she, as the abutting owner, or otherwise, did not, before the making of such mortgage, obtain title to the disputed strip of land either because of any proceedings taken in 1904 by the town council of North Kingstown, or by reason of any claimed abandonment of the portion of the Ten Rod Road contiguous to her property. We are not now required to pass upon the effect of the proceeding taken by the town council of North Kingstown in 1927, when certain portions of the Ten Rod Road were ordered abandoned, since that date was subsequent to 1921, when she executed the mortgage under which the plaintiff derives his title.

The plaintiff, however, also argues that, following the marking out of the portion of the Ten Rod Road in 1904, as above set out, the defendant's wife by inclusion, exclusive user, and general acquiescence over an extended period acquired title to the strip of land in question. From the evidence on this point, it appears that very soon after this portion of the Ten Rod Road was marked out in 1904, the defendant built a stone wall along the northerly line of such road as delineated on the plat filed with the report of the committee, thus inclosing with Mrs. Girard's property the acre involved herein, which stone wall still stands as defendant built it. Within this acre the land was cultivated, trees were planted, and toward its westerly end a building and sheds were erected thereon, and another building moved thereto from the seven-acre tract. The plaintiff contends

that these various acts, done largely by the defendant, were performed by him on behalf of, and acting for, his wife.

Since the strip of land in question still remained, on the record now before us, as part of the Ten Rod Road after the marking out of that road, even though not used as part of the highway for the purposes of travel, it is clear that under the decisions of this court the defendant's wife could not acquire title as against the public or the state to such strip, constituting a portion of a defined highway, by prescription, or exclusive occupation and user, no matter for how long a period. *Simmons* v. *Cornell*, 1 R. I. 519; *Knowles* v. *Knowles, supra; Gill* v. *Town Council, Jamestown, supra.* Assuming, but not determining, that she could, however, thus acquire a title to such strip, which would be valid except as against the public, the question remains whether such title, if any she had, passed under the mortgage deed to the Industrial Trust Company. We are of the opinion that it did not.

An examination of the mortgage in question reveals, as hereinbefore indicated, that the description of the property conveyed therein to the mortgagee is set out in practically the same language as appears in the deed of 1902 from the defendant to his wife, the mortgagor, and in the deed of 1900 to the defendant from the devisees of Turner. All these instruments describe the property passing under the respective conveyances as containing about seven acres, more or less. The evidence shows that the disputed strip amounts to approximately an acre more. Further, in such mortgage it is set out that the premises conveyed thereby are known as the "Bowen Estate," by which designation it would appear that the original tract of seven acres only was intended. Also, the following language, which is contained in said mortgage, shows clearly the intention of the parties to that instrument in regard to the extent of the property conveyed therein, namely: "Meaning to convey the same premises conveyed to this Mortgagor by deed from Henry N. Girard,

dated June 6, 1902 . . . ." In our judgment, therefore, the parties to that mortgage plainly intended to pass title to the original seven-acre farm only.

Such construction of the mortgage in issue is reasonably supported by the surrounding facts and circumstances appearing from the evidence in this case. Since the town council of North Kingstown, by its action in 1904 in ordering that the portion in question of the Ten Rod Road be surveyed, bounded and marked out, clearly did not attempt to abandon any part of that highway, and did not in fact at that time make any such order of abandonment or take any action which amounted to such abandonment, the northerly line of such highway remained as originally located. The description, therefore, which sets out the property conveyed by the mortgage of 1921 as bounding southerly on the Ten Rod Road, can properly and reasonably be held to refer to such original northerly line of said road, which clearly is the line referred to in the deed of 1902. We find this to have been the intent of the parties to that instrument. The general rule that ordinarily, in the absence of evidence to the contrary, when a highway is referred to as a boundary, the highway as it is opened and practically exists, rather than its layout of record, is the boundary intended by the parties, has no application under the facts and circumstances in the instant case, because, as heretofore discussed, they show evidence of a contrary intent. Also, no proof appears on the record herein that the parties to the above mortgage intended that the southerly boundary of the premises conveyed in the said mortgage deed was other than the original northerly line of said Ten Rod Road.

We conclude, therefore, that the plaintiff has not proved that Mrs. Girard, when she executed the above-mentioned mortgage in 1921, conveyed any interest in the acre of land in question to the Industrial Trust Company; that said tract of land, therefore, was not covered by or included in said mortgage; and that the plaintiff, who purchased at the fore-

closure sale under that mortgage, took merely the property embraced in the mortgage, and hence has not proved any title to the strip of land in dispute, and the improvements thereon.

In view of our holding that the plaintiff has failed to establish his title to this strip of land, we find that the trial justice committed error in awarding possession thereof to the plaintiff, and that the defendant's exceptions to that portion of the decision should be sustained. As to the remainder of the property set out in the plaintiff's writ and concerning which there is no dispute, the decision of the trial justice is correct. On the present record, the question of who now holds the title to the tract of land involved herein, amounting to approximately an acre, is not now before us, and is not decided. The above disposition of the case renders it unnecessary for us to pass upon the defendant's exception to the refusal of the trial justice to make certain special findings as requested by the defendant.

The defendant's sixth, seventh and eighth exceptions are sustained.

On January 19, 1938, the parties may appear before this court to show cause why the case should not be remitted to the superior court with direction to enter a judgment for the plaintiff for possession of the original tract of seven acres only, and a judgment for the defendant for his costs.

*McGovern & Slattery, James A. Higgins,* for plaintiff.
*John J. Dunn,* for defendant.