JAMES C. DAVIS *vs.* HENRY N. GIRARD *et al.*

APRIL 1, 1953.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

236

Capotosto, J.  This bill in equity, under general laws 1938, chapter 528, §26, as amended, was brought to establish title in and right to possession of certain realty therein described, to remove clouds on title, for an accounting of rents and profits, and for other incidental relief.  The cause was heard in the superior court on amended bill, pleas, answers in the nature of cross bill, and proof.  The trial justice overruled the pleas, denied and dismissed the cross

bill and granted the prayers of the bill. From a final decree to that effect respondents have appealed to this court alleging as their main grounds therefor that the decision is against the law and against the evidence and the weight thereof.

The instant cause is a continuation of litigation between these parties over certain real estate located in the town of North Kingstown in this state. See *Davis* v. *Girard,* 59 R. I. 471, 60 R. I. 38, 70 R. I. 291, 74 R. I. 125, and *Girard* v. *Sawyer,* 64 R. I. 48, and 66 R. I. 403, reference to which cases is hereby made for the background and incidental details of complainant's claim of title to the realty here in question. The basic issue in this cause concerns certain lands with buildings and improvements thereon, which, for convenience, the parties have called parcel No. 1, parcel No. 2, and the Town Pound. We will adopt those designations in this opinion. At the hearing before us counsel for respondents admitted in open court that complainant is the present owner in fee of parcel 1. Ownership of parcel 2 and the Town Pound, however, is disputed.

In order to understand clearly the questions involved it is necessary to keep in mind that parcel 1, title to which is now conceded to be in complainant, bounds southerly on the northerly line of the *original* Ten Rod Road, so called. By reason of such ownership complainant also claims title to and right to possession of approximately one acre of land with improvements thereon, herein called parcel 2, abutting on said southerly boundary of parcel 1, which land of parcel 2 he contends reverted in fee to his predecessor in title when the *original* Ten Rod Road was narrowed by the proceedings to which we will presently refer. The respondent Henry N. Girard, who is in possession of parcel 2, contests such claim on the ground that he acquired title to that land by adverse possession for the statutory period. The respondent John W. Sweeney is the holder of certain mortgages from Girard which complainant claims are clouds on his title.

The history of the Ten Rod Road is of importance in the circumstances. Upon petition to the general assembly in February 1807 "praying that a turnpike road may be established from the village of Wickford, in North-Kingstown, to the State of Connecticut," a committee of that body was appointed "to lay out and locate the said road, and to appraise the damage to the owners of the land over which the same shall be laid, and to report at the next session of this Assembly." At the May session of 1807 the committee reported that they had laid out and located said road in accordance with a plat appended to the report, and that they had "not appraised the damages to the owners of the land, on account of there having been no application to them for that purpose * * *."

In October 1807 the general assembly granted a charter to the Wickford Turnpike Company with power to charge a specified toll for the use of the highway as laid out and located by the state the previous May. The record is silent as to whether the turnpike company ever organized under its charter, which, among other things, provided that when the toll collected from such use equaled the expenses of the company and the value of its capital stock the "said road shall revert to the public, and forever thereafter remain discharged of the toll aforesaid." However, whether the turnpike company was or was not organized, it is clear that the Ten Rod Road, a very wide highway as its name implies which was apparently intended primarily as a road for the driving of cattle from inland to tide water, was established and maintained by the state as a public highway from 1807 to the time of the incidents that we are about to mention.

In June 1904 the town council of North Kingstown, acting under certain statutory powers, appointed a committee to "survey, bound and mark out" the portion of the Ten Rod Road in such town from Wickford Junction to Coalition Corner, which area included the premises presently in dispute. A report with plat annexed was made

by the committee in August 1904 and the following November such report and plat were approved and duly recorded by the town council. According to the plat just mentioned the highway as marked out thereon was materially narrower than the original Ten Rod Road. This was an abortive attempt by the town council to abandon the land deemed useless as a highway, since in proceedings by a town solely to "survey, bound and mark out" an existing highway it has no power to abandon a portion thereof by reducing its width. See *Davis* v. *Girard,* 59 R. I. 471.

The procedure that a town shall follow in abandoning a highway is prescribed in G. L. 1923, chap. 95, sec. 29 *et seq.,* now G. L. 1938, chap. 72, §29 *et seq.* Apparently acting under such provisions of the statute the town council, in December 1926, upon petition found that according to the committee's plat hereinbefore mentioned a certain portion of the original Ten Rod Road had ceased to be useful to the public as a highway and should be abandoned. Notice to that effect was thereafter given to interested parties and on February 14, 1927 the town council entered an order that a portion of such highway outside of the limits set by the committee was abandoned as part of a public highway, and that, using substantially the language of chap. 95, sec. 30, "the title of the land upon which said abandoned highway existed hereby reverts to its owner." As already pointed out, the premises involved in this cause were located within the portion of the highway which was thus abandoned. At that time title to the land abutting the abandoned portion of the highway, heretofore identified as parcel 1, was in Alice Girard, wife of respondent Henry N. Girard and the immediate predecessor in title of the complainant.

At this point it is to be noted that Alice died in April 1933 leaving a will disinheriting her husband and directing her executor, the Industrial Trust Company, to sell her real estate and to pay the various legacies bequeathed in such will. At the time of her death the Industrial Trust Com-

pany was the holder of a certain mortgage on parcel 1 executed by her in 1921, wherein her husband had released his right of curtesy. The executor qualified in June 1933 and resigned in May 1935, whereupon Ada L. Sawyer was appointed administratrix *d.b.n.c.t.a.* On July 16, 1935 the mortgage was duly foreclosed and complainant as the purchaser received a mortgagee's deed conveying to him the premises therein described, namely parcel 1, with all the privileges and appurtenances thereunto belonging.

Subsequently, on May 1, 1941, the administratrix, having first been thereunto duly authorized by the probate court, executed a quitclaim deed to the complainant of parcel 2 with all appurtenances. The complainant rests his claim of title to parcel 2, first, on his admitted ownership in fee of parcel 1, which abuts on the portion of the highway which the town council ordered abandoned in February 1927; secondly, on the deed from the administratrix of Alice's estate; and thirdly, on an act of the general assembly in 1944, which we are about to consider, relating to the action of the town council in 1927 with reference to the Ten Rod Road.

Apparently there must have been some doubt as to the power of the town council of North Kingstown to abandon any portion of an ancient highway which the state had laid out in 1807 and which the public had used for well over a century. Under such conditions the general assembly enacted public laws 1944, chap. 1422, which deserves special consideration because of its importance in this cause. The act first sets out verbatim the order of the town council of February 14, 1927 declaring the abandonment of a certain portion of the Ten Rod Road which had ceased to be useful to the public as a highway. It then continued as follows:

> "And whereas said abandoned portion of said Ten Rod road has been taxed to the adjoining landowners and built upon or used and occupied by them since said date and for a long time prior thereto;

Now Therefore, in order to clarify, define and set out the *respective interests of the state, town and adjoining landowners* and to prevent the raising of technical questions to said abandonment and to otherwise do equity, said abandonment is validated and it is further declared that now and as of said date, February 14th, 1927, said portion of said Ten Rod road is abandoned." (italics ours)

In view of the enactment of P. L. 1944, chap. 1422, we need not express an opinion concerning the validity of the abandonment by the town council, since the statute is of controlling force in the circumstances of record. We find no ambiguity in the language of chapter 1422. The cause for its enactment, the conditions which it sought to rectify, and the remedy that the general assembly saw fit to apply are all set out in concise, clear and comprehensive terms. Confronted by a confusing situation, apparently resulting from the actions of the town council which began in 1904 and culminated in 1927, the general assembly intervened (1) "to clarify, define and set out the respective interests of the state, town and adjoining landowners"; (2) "to prevent the raising of technical questions to said abandonment"; and (3) "to otherwise do equity." With full knowledge of the existing conditions it therefore first validated the action of the town council of February 14, 1927, and then, to avoid all misunderstanding of the intent and scope of the act, it expressly declared that as of such date the "said portion of said Ten Rod road is abandoned."

It is our judgment that the general assembly, by enacting chapter 1422, intended not only to relieve the town of North Kingstown from the obligation of maintaining the abandoned portion of the Ten Rod Road as a public highway, but, in order to accomplish the different objectives so definitely specified therein, it expressly renounced and vacated as of February 14, 1927 any and all rights that the state may have had in the abandoned tract of land for use as such highway. Under that view of chapter 1422,

parcel 2 reverted to the owner of parcel 1 which abutted thereon, that is, first to Alice L. Girard and subsequently, through the administratrix of her estate, to her successor in title James C. Davis, the complainant in this case. See *Davis V. Girard,* 74 R. I. 125.

The conclusion that we have just expressed leads us to a consideration of respondent Girard's claim that title to parcel 2 vested in him because of adverse possession of those premises for the period prescribed by statute. In so far as pertinent, G. L. 1923, chap. 300, sec. 2, now G. L. 1938, chap. 438, §2, provides that where any person or persons "shall have been for the space of 10 years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, tenements or hereditaments for and during the said time, claiming the same as his, her or their proper, sole and rightful estate in fee-simple, such actual seisin and possession shall be allowed to give and make a good and rightful title to such person or persons, their heirs and assigns forever * * *."

In *Union Savings Bank* v. *Taber,* 13 R. I. 683, this court had occasion to construe substantially the same statute and held that in order to satisfy its terms the kind of possession therein mentioned must be not only uninterrupted for the prescribed period but also adverse to the real owner. Tracing the origin of the statute to determine its intent and scope the court, at page 692 of that opinion, stated: "The statute of this State is peculiar. It differs essentially from the statute of 21 James I. cap. 16, and the statutes of other States, which operate merely as a limitation on the right of entry or action, in that it transfers the title or estate itself, *proprio vigore,* whenever the conditions under which it takes effect have been completely fulfilled." See also *Radican* v. *Radican,* 22 R. I. 405; *Tiffany* v. *Babcock,* 51 R. I. 350.

The evidence clearly establishes that Girard was in sole and actual possession of parcel 2 from the death of his wife in April 1933 to the institution of the present pro-

ceedings in January 1945, and that during all that time his possession was so overt and notorious as to amount to an ouster or disseisin of the real owner if the statute began to run in Girard's favor from the date of his wife's death, as he contends. Therefore assuming, without deciding, that such possession was uninterrupted, quiet and peaceful as the statute requires, it is of vital importance to determine when the statute began to run as a matter of law.

Due to material differences in the applicable statutes, there is no uniformity in the authorities as to when such a statute begins to run against a decedent's estate. In some jurisdictions it takes effect when letters testamentary or of administration are granted; in others, as soon as the legal representative of an estate assumes control thereof; and in still others, it remains inoperative while the estate is represented by an executor or administrator. 1 Am. Jur., Adverse Possession, §123. In view of these differences we are of the opinion that we should adhere strictly to the provisions of our own statutes with reference to the estate of deceased persons.

According to our statutes the estate of a deceased person is chargeable, among other things, with the payment of his debts, and if such person left a will the estate is chargeable with the payment of "such legacies as are expressly or impliedly charged upon the real estate * * *." G. L. 1938, chap. 570, §1. It is also the duty of an executor or administrator to pay such obligations out of the personal estate if sufficient and, if not, he is required to supply the deficiency, in pursuance of certain prescribed proceedings, by selling the real estate in whole or in part, and the deed given by him upon such sale "shall make as good title to the purchaser as the testator or intestate in his lifetime * * * being competent, could have made." G. L. 1938, chap. 570, §16.

The above-cited statutory provisions are to be read and construed in connection with G. L. 1938, chap. 579, §29, which in so far as pertinent reads as follows: "No heir or

devisee of a deceased person shall have power, within 2 years and 6 months after the first publication of the notice of the qualification of the first executor or administrator on the estate of such person, to incumber or aliene the real estate of the deceased so as to prevent or affect the sale thereof by the executor or administrator, if necessary, as prescribed by law * * *."

It is to be noted that the above-mentioned statutes were substantially the same under G. L. 1923, which were in force in 1933 at the time of the death of Girard's wife, as they were under G. L. 1938 which were in effect up to 1945. In the circumstances, construing the provisions of such statutes in relation to each other, it is our judgment that the plain intent and purpose thereof can reasonably be effectuated only if it is held that the statute of title by adverse possession does not begin to run against the estate of a deceased person represented by an executor or administrator until *after* the expiration of the two years and six months prescribed in chap. 579, §29.

A question akin to the one now before us and involving substantially the same statutes was considered by this court in *Knowles* v. *Blodgett,* 15 R. I. 463. That case held that an adverse possession of land begun *after* the death of the owner could not affect a deed of that land by his personal representative. At page 465 of the opinion the court stated: "An administrator, as such, does not have the estate; he has no seizin, and therefore cannot be disseized. He has only a power given him by statute to be exercised for certain purposes in a certain manner, and, if the decedent die seized, to hold that the power can be defeated by any subsequent disseizin would be to hold that the statute itself could be so defeated, which, it seems to us, would be not only against public policy, but absurd * * *."

Applying the provisions of our statutes relating to the estate of a deceased person to the facts of record, it is clear that the statute of title by adverse possession did not begin to run against the estate of Alice L. Girard until

December 1935, that is, two years and six months from and after June 1933, when the executor of Alice's will qualified and gave notice of its appointment. The present proceedings were instituted in January 1945. In the circumstances, even if we assumed that the evidence favorable to Girard was sufficient to satisfy all other requirements of the statute of title by adverse possession, it is evident that he had not been in uninterrupted possession of parcel 2 for ten years, as prescribed by that statute, when the complainant brought the instant bill. It is therefore our opinion that the complainant James C. Davis is presently the legal owner in fee of parcel 2, and as such he is entitled to the possession of those premises free and clear of any mortgage or mortgages placed thereon by the respondent Henry N. Girard.

We will now direct our attention to the Town Pound, a lot approximately 40 by 50 feet. The location of that lot, which has been mentioned incidentally in the cases of *Davis* v. *Girard* cited earlier in this opinion, has been heretofore a matter of surmise and speculation, since its ancient boundaries had been obliterated by the lapse of time. However, in this cause the location thereof was the subject of conflicting evidence, the main question at issue being whether it was part of the abandoned portion of the Ten Rod Road abutting on land belonging to Alice L. Girard which was subsequently conveyed to James C. Davis. The claims of the respective parties, as we understand them, are as follows. Davis contends that the lot reverted to him when the portion of the highway was abandoned as hereinbefore discussed. Girard, on the other hand, urges that title to the lot is in him under an original deed in 1916 and a confirmatory one in 1932 from the town of North Kingstown, and also by adverse possession against the estate of Alice L. Girard similar to that claimed in connection with parcel 2.

The trial justice found upon conflicting evidence that the lot in question was in fact located on the abandoned

portion of the Ten Rod Road; that the town of North Kingstown had no power to deed land of a public highway to Girard or any other person; that by reason of the abandonment of the portion of the highway on which the lot was located title thereto reverted to the abutting owner, Alice L. Girard, and by subsequent conveyance to the complainant Davis; and that the respondent Girard had failed to prove title by adverse possession to that lot. Under our well-settled rule the decision of a trial justice on conflicting evidence will not be disturbed unless it is clearly wrong. From our examination of such evidence we cannot say that the trial justice was clearly wrong in finding that the lot in question was part of the abandoned portion of the Ten Rod Road. In view of that finding the other conclusions based thereon were without error. It follows therefrom that James C. Davis is now the titleholder and owner in fee of the lot known as the Town Pound, free and clear of mortgages, if any, placed thereon by respondent Henry N. Girard.

The remaining question at issue relates to an alleged accounting between the parties. The evidence on this point was so broad, indefinite and speculative as to form no basis for an accounting in the true sense of that term. Confronted by a confusing situation, the trial justice attempted to deal with it in a summary manner and found that "a figure representing half the sum" fixed by the expert for the complainant "would come nearer the amount due Davis" and therefore he set such amount at $10,000.

However well meaning he may have been in the circumstances, he was clearly wrong in so deciding. In our opinion, unless the parties can otherwise agree, the matter of an accounting, which involves many complicated details over a considerable period of time, should be referred to a master for determination in the first instance. Because of a misunderstanding by the parties of certain language in the decree, we note here that the right to personal property, as such, which may belong to the respondent Henry N.

Girard should be awarded to him in a proper accounting whether by agreement or otherwise.

The appeal of the respondents, except as to the accounting, is denied and dismissed, the decree appealed from is modified in relation to the accounting as above set forth, and otherwise it is affirmed. On April 10, 1953 the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Francis A. Kelleher, John F. O'Connell,* for complainant.

*James O. Watts, Francis J. O'Brien,* for respondents.